EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* MIGUEL GONZÁLEZ CORTÉS, demandado y recurrente.

*Número:* R-62-191 *Resuelto:* 29 de junio de 1967

*Eric Milán Muñiz* y *Edna Abruña Rodríguez,* abogados del recurrente; *J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Contreras, Procurador General Interino,* y *Juan A. Faría, Procurador General Auxiliar,* abogados del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

De conformidad con las disposiciones del Art. 107 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 182) y lo resuelto en el caso de *General Motors Acceptance* v. *Tribl. de Distrito*, 70 D.P.R. 941 (1950), (¹) el fiscal de distrito radicó en 3 de febrero de 1960 demanda sobre confiscación de un vehículo de motor ante la Sala de Aguadilla del Tribunal Superior, alegando sustancialmente que "el día 23 de octubre de 1959 el Teniente Luis Ramos Noriega de la policía de Aguadilla, sorprendió al demandado Miguel González Cortés, conduciendo y transportando en el vehículo marca Ford, modelo de 1955, tablillas número P-200-088, motor número U5EX-129-760, seis listas o tickets de tres (3) cifras, los que llevaba sobre su persona el demandado Miguel González Cortés y las cuales pueden usarse y se usaban para los juegos ilegales de la Bolita o Bolipool".

Contestada la demanda y celebrado un juicio en los méritos, el tribunal de instancia dictó sentencia declarando con lugar la demanda, luego de formular las siguientes:

"Conclusiones de Hecho:

1. El día 23 de octubre de 1959 Miguel González Cortés conducía el vehículo de motor marca Ford, Modelo 1955, tablillas número P-200-088, por la Carretéra Estatal Número 442 en el Pueblo de Aguadilla, conduciendo varios estudiantes en su vehículo.

2. En dicha fecha y al llegar al Kilómetro o, Hectómetro 7, fue detenido por el Teniente Luis Ramos Noriega de la Policía de Aguadilla, por correr el vehículo a mayor velocidad en una zona escolar.

3. Al ser requerido para que mostrase su Licencia de Chofer, abrió su cartera, la cual llevaba sobre su persona y de dentro de ésta salieron tres listas de bolipul y cayeron al suelo.

---

(¹) La Ley Núm. 39 de 4 de junio de 1960, conocida como Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones", (34 L.P.R.A. secs. 1721 y 1722) cambió el procedimiento señalado en el caso de *General Motors Acceptance,* supra, siendo ahora el perjudicado a quien corresponde impugnar la confiscación mediante la interposición de la oportuna demanda.

4. Con motivo de la ocupación de dichas listas de bolipul el demandado fue arrestado y al registrarse su persona se ocuparon tres listas adicionales de bolipul de cinco fracciones cada una, lo cual hizo un total de treinta fracciones de bolipul ocupados al demandado en dicho momento.

5. Con motivo de estos hechos el demandado fue acusado de una Infracción a la Ley 220 de 1948 y al ser enjuiciado fue encontrado culpable de dicho delito. Por los hechos arriba expuestos es que se inicia el presente procedimiento de confiscación."

A base de los anteriores hechos y como cuestión de derecho, dicho tribunal concluyó que al portar el demandado "conscientemente sobre su persona bolipul y consciente de la presencia de ese material delictivo sobre su persona, hacer uso de su vehículo de motor, aunque sea en gestiones ajenas al juego ilegal de la bolita, está usando su vehículo de motor para transportar dicho material delictivo y por tanto procede la confiscación".

En este recurso el demandado recurrente imputa al tribunal sentenciador la comisión de los siguientes errores:

"1—El demandado-recurrente sostiene que la prueba presentada por el demandante-recurrido no justifica la sentencia dictada por no amoldarse a las disposiciones legales vigentes y a la jurisprudencia de este Hon. Tribunal.

2—El Tribunal inferior erró al resolver que el mero hecho de portar conscientemente sobre su persona hojas de bolipool mientras conducía un vehículo de motor, aunque sea en gestiones ajenas al juego de bolita, es suficiente para justificar la confiscación del vehículo."

El resultado de este caso depende de la interpretación que deba darse a la Sec. 5 de la Ley Núm. 220 de 1948 (33 L.P.R.A. sec. 1251), pero antes de proceder a su estudio debemos resumir ciertos principios generales de interpretación aplicables a las leyes que autorizan la confiscación.

Por la confiscación el Estado priva de la propiedad a su dueño sin compensación aunque, claro está, mediando

el debido procedimiento de ley de ser notificado y oído. Las confiscaciones no son favorecidas por las cortes y los estatutos autorizándolas son interpretados restrictivamente. Ello es así porque la naturaleza de la confiscación es punitiva. (²) Generalmente las cortes interpretan tales estatutos de suerte que resulten consistentes con la justicia y los dictados de la razón natural. No deben interpretarse estos estatutos de manera que propicien la confiscación, a no ser que del propio estatuto y a la luz del propósito legislativo y de las circunstancias existentes se concluya que así lo intentó la legislatura. No debemos ceñirnos a la letra estricta del estatuto para sostener una confiscación ni debemos inferirla del lenguaje dudoso de la ley. Esto no significa, desde luego, que cambiemos el lenguaje claro de un estatuto bajo el pretexto de su interpretación. 37 C.J.S., *Forfeitures*, Sec. 4 (b), pág. 8.

La citada Sec. 5 de la Ley Núm. 220 de 1948 (33 L.P.R.A. sec. 1251) dispone:

"Todos los artefactos, vehículos u otros medios de transportación, monedas y demás enseres e implementos ocupados y utilizados en relación con los juegos prohibidos de la 'bolita', 'bolipul', combinaciones clandestinas en relación con los 'pools' o bancas de los hipódromos de Puerto Rico, y loterías clandestinas, que hayan sido ocupados en relación con dichos juegos, serán confiscados por el Secretario de Justicia en favor del Estado Libre Asociado de Puerto Rico y, excepción hecha de los vehículos, bestias o embarcaciones marítimas o aéreas, vendidos por orden del tribunal correspondiente a través del alguacil del mismo en pública subasta, al mejor postor, y el importe de la venta con la suma que fuere ocupada pasará al Secretario de Hacienda de Puerto Rico para ser utilizados por los municipios de segunda y tercera clases, para distribuirse en proporción al número de habitantes respectivos. Los vehículos de motor confiscados serán puestos bajo la custodia de la Oficina de Transporte. Aquellos artefactos y demás enseres que a juicio del tribunal correspondiente, no tengan otro uso que el relacionado con

---

(²) *Ochoteco* v. *Tribunal Superior*, 88 D.P.R. 517 (1963); *One Plymouth Sedan* v. *Pennsylvania*, 380 U.S. 693.

las infracciones a las secs. 1247 a 1257 de este título, serán destruidos.

Para la confiscación y disposición de vehículos, bestias y embaraciones marítimas o aéreas se seguirá el procedimiento establecido por la ley conocida como 'Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones', secs. 1721 y 1722 del Título 34."

 Recordemos que la sentencia decretando la confiscación del vehículo del recurrente se fundó en que éste lo usó, aunque en gestiones ajenas al juego ilegal de la bolita, para transportar material delictivo (boletos de bolipul). Sin embargo, de acuerdo con el lenguaje de la Sec. 5 arriba transcrita, no es la mera transportación de material de bolita por sí solo, lo que conlleva la confiscación del vehículo. Lo que dispone dicha sección es que serán confiscados, entre otras cosas, los vehículos *ocupados y utilizados en relación* con los juegos prohibidos de la bolita, bolipul, etc., que hayan sido ocupados en relación con dichos juegos. Para que el uso del vehículo caiga dentro de la prohibición del estatuto debe haber algo más que un uso meramente incidental en la transportación del material delictivo. El término "relación" significa conexión, correspondencia de una cosa con otra. Es decir, para que proceda la confiscación, el vehículo debe ser utilizado para llevar a cabo alguno de los juegos prohibidos por la ley, tal como ocurre con las imprentas utilizadas para imprimir el material del juego prohibido, el dinero que se recolecta en dichos juegos u otros artefactos que se utilicen (³) en relación con dichos juegos. Por ejemplo, un vehículo se utiliza en relación con los mencionados juegos prohibidos cuando se usa en la distribución del material prohibido, boletos, *tickets*, listas de bolita, dinero, usado en dichos juegos o cuando se utilizan por un vendedor de boletos, *tickets* o números para trasladarse de un sitio a otro con el pro-

---

(³) Véase, *Ben Ali* v. *Towe*, 103 A.2d 158; *Boling* v. *Division of Narcotic Control*, 181 N.E.2d 147.

pósito de llevar a cabo su ilícito negocio. De ahí que la transportación del material usado en los juegos prohibidos puede dar lugar a la confiscación del vehículo utilizado para dicha transportación debido a que en esos casos existe la relación o conexión entre el vehículo y el juego prohibido y no importa que el uso acostumbrado del vehículo sea otro, si en verdad el vehículo se usa además como un medio para realizar cualquiera de las actividades inherentes y necesarias para desarrollo y ejecución del juego ilegal.

Cuando la legislatura ha querido sancionar mediante la confiscación, la mera transportación de cosas u objetos delictivos, lo ha consignado en forma clara y expresa en los estatutos correspondientes. Así por ejemplo, la Ley de Espíritus y Bebidas Alcohólicas (Ley Núm. 6 de 30 de junio de 1936, según enmendada), en su Art. 62 (13 L.P.R.A. sec. 1717), faculta y ordena al Secretario de Hacienda confiscar "cualquier vehículo . . . en que se cargue, descargue, *transporte*, lleve o traslade . . . espíritus destilados o bebidas alcohólicas . . . sobre los cuales no se hubieren pagado los impuestos prescritos por esta ley". (Énfasis nuestro.) Similares preceptos se encuentran en otras leyes. La Ley de Impuestos Sobre Artículos de Uso y Consumo (Ley Núm. 2 de 1956) en su Art. 77 (13 L.P.R.A. sec. 4077) faculta al Secretario de Hacienda para confiscar "cualquier vehículo . . . en que se cargue, descargue, *transporte*, lleve o traslade . . . mercancía sobre la cual no se haya pagado los impuestos correspondientes". La Ley de Narcóticos (Ley Núm. 48 de 1959) también autoriza la confiscación de "cualquier vehículo . . . que se utilice . . . para facilitar cualquier *transacción* ilícita relacionada con la posesión, control, venta, transportación, uso o traspaso de cualquier droga narcótica". También la Ley de Armas (Ley Núm. 17 de 1951) autoriza al Secretario de Justicia a confiscar cualquier vehículo en que se sorprendiere "a cualquier persona en el acto de

*transportar* . . . cualquier arma en violación al presente capítulo". (Énfasis nuestro.)

■ En cambio para que proceda la confiscación bajo la Ley Núm. 220 de 1948, el vehículo debe ser ocupado y utilizado en relación con los juegos prohibidos mencionados en dicha ley, y que haya sido ocupado en relación con dichos juegos. Es decir, el vehículo ocupado en relación con los juegos prohibidos mencionados en la ley, es el que está sujeto a confiscación. La relación entre el vehículo y los juegos prohibidos queda establecida cuando el vehículo se usa para facilitar, ayudar o realizar los actos que propician el hecho de que los juegos se lleven a cabo.

El recurrente en este caso era un porteador público dedicado a transportar en un vehículo de su propiedad, pasajeros mediante pago. En la hora, fecha y sitio en que se le ocuparon unos 30 quintos de bolipul, divididos en 6 quintos de tres números distintos que llevaba en su cartera, conducía estudiantes hacia la Escuela Superior de Aguadilla. La prueba sólo establece que al ser detenido el vehículo por una infracción a la Ley de Tránsito, y al solicitársele su licencia de chofer, el recurrente extrajo de su bolsillo su cartera y al abrir ésta, se cayeron unos quintos de bolipul. El automóvil fue registrado y no se encontró en él ningún otro material usado en los juegos prohibidos por la Ley Núm. 220. Todo el material ocupado consistió en los 30 quintos de bolipul que el recurrente llevaba en su cartera sobre su persona.

■ Difícil resulta sostener que el recurrente usaba su vehículo en ese momento en relación con los juegos ilegales prohibidos por la ley, en ausencia de otra evidencia demostrativa que al vehículo se le daba el uso adicional de facilitar o ayudar en alguna forma la operación del juego. La prueba del Pueblo es más bien compatible con la conclusión de que se trata de un comprador de *tickets* de bolipul para jugarlos y que los guarda en su cartera, y que tal vez olvi-

dándose de ese hecho la abre en presencia de la policía para mostrarle su licencia de chofer.

Debe resolverse en consecuencia que dentro de las circunstancias concurrentes en este caso no procedía la confiscación del vehículo del recurrente.

*Se revocará la sentencia objeto de revisión y se dictará otra declarando sin lugar la demanda.*