# 96 DTA 122

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO

CAPARRA MOTOR SERVICE, INC.
Demandante-Apelada

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Demandado-Apelante

Núm. KLAN-96-00453

San Juan, Puerto Rico, a 26 de septiembre de 1996

Panel integrado por su presidenta, la Juez Rivera de Martínez
y los Jueces Martínez Torres y Rodríguez García

Rodríguez García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Consideramos un recurso que nos permite la **doctrina del tercero inocente,** la cual ha sido reconocida en nuestro ordenamiento jurídico como una excepción al carácter *in rem* de los procedimientos de confiscación que autoriza la **Ley Uniforme de Confiscaciones**, Ley Núm. 93 de 13 de julio de 1988, 34 L.P.R.A. sec. 1723 y ss.

Comparece ante este Tribunal con el presente recurso de apelación el Estado Libre Asociado de Puerto Rico, por conducto de la Oficina del Procurador General.

El Estado apela de la sentencia emitida en 15 de marzo de 1996 y notificada en 19 de marzo de 1996, en el caso civil núm. FAC95-107, sobre impugnación de confiscación. En la sentencia recurrida se declara Con Lugar una demanda impugnando la confiscación de un vehículo de motor y por ende se decreta nula la confiscación.

La parte apelada Caparra Motor Service, Inc, ha comparecido con su escrito en Oposición a Recurso de Apelación, lo cual nos pone en condiciones de resolver y al hacerlo modificamos la sentencia recurrida y luego de modificada, la confirmamos. Nos explicamos.

### I

Es pertinente comenzar con un breve recuento del trasfondo fáctico y procesal que origina la controversia que hoy dilucidamos.

Caparra Motor Service, Inc., parte apelada, es una corporación que se dedica al arrendamiento de vehículos de motor a través de su división Target Rent-A-Car System, Inc. Dicha corporación, *"Caparra",* en 2 de marzo de 1995 arrendó un automóvil marca Mitsubishi, modelo Mirage del año 1995, cuya tablilla es la BWJ-566, a la señora Maritza Cardona de León.

Del contrato de arrendamiento número 94539 y del contenido de la apelación surge que **el vehículo arrendado debía ser entregado en 4 de marzo de 1995.** ■

Sin embargo, **el vehículo no fue entregado el día acordado y en 5 de marzo de 1995, el automóvil arrendado estuvo envuelto en un accidente automovilístico** ocurrido en la Carretera 26, Km. 6.0, jurisdicción del Municipio de Carolina.

En el momento del accidente, el auto arrendado era conducido por Jamille Nieves Santiago, según se desprende del Informe Policíaco Número 75141. ■

Esta joven **Jamille Nieves Santiago, no era la persona autorizada por la arrendadora** *"Caparra"* **para conducir el vehículo arrendado.** En adición, **carece de la licencia de conducir,** por lo que el agente de la policía procedió a leerle las advertencias de ley y se trasladaron al cuartel más cercano. Una vez en el Cuartel de la Zona Turística de Isla Verde, se examinó el vehículo arrendado para completar el Formulario PPR-128. ■

Como resultado de esta inspección se encontraron en la guantera del auto tres bolsas plásticas transparentes con aparente picadura de marihuana, la cual al ser analizada arrojó un resultado positivo de marihuana. ■ Por ello, se radicó una denuncia en contra de Jamille Nieves Santiago por violación al Art. 404 de la Ley de Sustancias Controladas, por el que se determinó causa probable. ■

También se procedió a confiscar el vehículo arrendado, según lo ordenara la Fiscal Sussette Pérez Moll. ■ Fueron notificados de la confiscación: Target Rental Car; ■ Caparra Motor Service; ■ Jamille Nieves Santiago y G.E. Capital Corp. ■ No se notificó a la arrendataria Maritza Cardona de León.

Así las cosas, en 27 de marzo de 1995 *"Caparra"*, presentó demanda impugnando la confiscación del vehículo arrendado y una *"Moción Prestando Fianza, Solicitando Aprobación de la Misma y Orden para que se Entregue o Devuelva Vehículo de Motor Confiscado"*. En 27 de marzo de 1995 también se emplazó al Secretario de Justicia ■ y en 13 de abril de 1995 el Secretario de Justicia contestó la demanda. ■

Luego en 6 de abril de 1995 el Tribunal Superior de Carolina dictó Orden aprobando y aceptando la fianza prestada por *"Caparra"*, parte demandante-apelada e instruyó al Secretario de Justicia a que entregara a *"Caparra"* el vehículo de motor confiscado. ■ En 25 de abril de 1995 la División de Confiscaciones del Departamento de Justicia cuestionó la entrega del vehículo confiscado. ■

En 26 de octubre de 1995, General Electric Capital Corporation of Puerto Rico, Inc. presentó Moción y Demanda de Intervención ante el Tribunal Superior al amparo de la Regla 21.1 de las de Procedimiento Civil en el caso civil núm. FAC-95-107, alegando haberle concedido a *"Caparra"* una hipoteca sobre bien mueble la cual grava el vehículo confiscado. ■

En 9 de enero de 1996, *"Caparra"*, presentó Moción Solicitando Sentencia Sumaria, alegando que no existía controversia en los hechos del caso, por lo que entendía debía aplicársele a su favor la doctrina de tercero inocente que se utilizó en *Ochoteco v. Tribunal Superior* 88 D.P.R. 517 (1963). ■ Por esta razón en 26 de marzo de 1996, la parte demandada, el Estado Libre Asociado, presentó Moción en Oposición a Solicitud de Sentencia Sumaria. ■

Finalmente, en 15 de marzo de 1996 y notificada en 19 de marzo de 1996, el Tribunal Superior emitió Sentencia en el caso civil núm. FAC95-0107, donde declara Con Lugar la demanda y decreta la nulidad de la confiscación. De esta decisión es que recurre el Estado Libre Asociado en apelación ante nos haciendo los siguientes señalamientos de error:

*"A. ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR QUE A CAPARRA MOTOR SERVICE LE APLICA LA DOCTRINA DE TERCERO INOCENTE.*

*B. ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR QUE LA SEÑORA MARITZA DE LEON ES PARTE INTERESADA POR LO CUAL DIJE TENIA QUE SER NOTIFICADA DE LA CONFISCACION.*

*C. ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL RESOLVER POR LA VIA SUMARIA EL CASO DE EPIGRAFE SIN LA CELEBRACION DE UNA VISTA."*

## II

El procedimiento de confiscación en nuestro sistema jurídico tiene un carácter *in rem*, puesto que va dirigido contra la cosa misma.

A tenor con el carácter *in rem* del procedimiento de confiscación, se ha resuelto en numerosas ocasiones que si el dueño ha puesto el vehículo en manos del infractor, los derechos del dueño corren la suerte del uso a que el infractor pueda someter el vehículo. *Carlos F. Del Toro v. E.L.A.*, ___ D.P.R. ___, (1994), **94 J.T.S. 119;** *General Accident Insurance Co. v. E.L.A.* ___ D.P.R. ___ (1994) **94 J.T.S. 140;** *Carlo v. Srio. de Justicia* 107 D.P.R. 356 (1978); *E.L.A. v. Tribunal Superior,* 94 D.P.R. 717 (1967).

La Ley Uniforme de Confiscaciones, *supra*, regula todo lo concerniente al procedimiento de confiscación. Nuestro Tribunal Supremo ha dicho que los tribunales no favorecen las confiscaciones y las leyes relacionadas con las mismas son interpretadas restrictivamente. *Carlos F. Del Toro Lugo v. E.L.A.*, ___ D.P.R. ___ (1994), **94 J.T.S. 119,** pág. 160.

El artículo 2 de la Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1723, señala que estará sujeta a confiscación:

*"Toda propiedad que sea utilizada en relación a la comisión de delitos graves y de aquellos delitos menos graves en que por ley se autorice la confiscación, cuando tales delitos graves y menos graves estén tipificados en las secs. 3001 et seq. del Título 33, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones, así como en otras leyes y aquella propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada en favor del Estado Libre Asociado de Puerto Rico."*

De otra parte, el artículo 3 de la Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1723a, dispone el procedimiento de confiscación:

*"(1) La ocupación de la propiedad sujeta a confiscación se llevará a cabo por la agencia del orden público o el funcionario a cargo de la implantación de la ley, por sí o por conducto de sus delegados, policías o agentes del orden público mediante orden de un magistrado o tribunal competente o sin previa orden del tribunal en los siguientes casos:*

*(a) Cuando la ocupación se efectúa mientras se lleva a cabo un arresto;*

*(b) cuando la ocupación se efectúa en virtud de una sentencia judicial, o*

*(c) cuando la propiedad a ocuparse haya sido utilizada en relación a la comisión de cualquiera de los delitos que se expresan en la sec. 1723 de este título previa orden del funcionario a cargo de la implantación de la ley aplicable o sus delegados.*

*(2) El funcionario bajo cuya autoridad se efectúa la ocupación o la persona en la que él delegue notificará el hecho de la ocupación y la tasación o valor estimado de la propiedad ocupada a las personas siguientes:*

*(a) Aquellas que por las circunstancias,.... información y creencia, el funcionario considere como dueños, y*

*(b) **en los casos de vehículos de motor, se notificará además al dueño según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas y al acreedor condicional que a la fecha de la ocupación haya presentado su contrato para ser archivado. Además, en los casos que aplique, se notificará al acreedor hipotecario de un vehículo de motor cuando se haya cumplido con lo dispuesto en la sec. 1874 del Título 30."** (Enfasis nuestro).

Pasemos ahora al análisis del desarrollo jurisprudencial de la figura de la confiscación y dentro de la misma la doctrina del tercero inocente.

Esta doctrina representa una excepción al carácter *in rem* del procedimiento de confiscación y la misma no ha sido aplicada de manera mecánica por el Tribunal Supremo, sino que atendiendo a las circunstancias específicas de cada caso. Veamos.

Comencemos con el caso de *Metro Taxicabs v. Tesorero*, 73 D.P.R. 171 (1952), donde el Tesorero de Puerto Rico, confiscó un vehículo propiedad de la Metro Taxicabs, Inc., mientras era utilizado para transportar bebidas alcohólicas, sobre las cuales no se habían pagado los correspondientes derechos de rentas internas. Por esta razón la Metro Taxicabs recurrió al Tribunal de Distrito solicitando la devolución del vehículo confiscado.

El tribunal de instancia revoca la decisión del Tesorero, por ello este último recurre al Tribunal Supremo, quien revoca al tribunal de instancia y a la página 179 señala:

*"De acuerdo con la declaración de Alicea --que es en la que basa exclusivamente sus conclusiones de hecho el juez inferior-- y sin entrar a considerar otros extremos que surgen del resto de la propia prueba de la demandante, es evidente que se trata en este caso, a lo sumo, del uso no autorizado de un vehículo por el empleado a quien le fue [sic] confiado, quien lo entregó a, y consintió y permitió que otra persona lo usara ilegalmente. Esa circunstancia, sin embargo, no protege a la demandante. En tal situación es de clara aplicación la regla expuesta en el caso de General Motors Acceptance v. Brañuela, 61 D.P.R. 725, en el sentido de que "si el dueño o tercero interesado directa o indirectamente ha puesto el vehículo en posesión del infractor o de la persona bajo la cual actúa éste, los derechos del dueño o tercero interesado en tales circunstancias corren la suerte del uso a que el poseedor pueda someter el vehículo."*

Luego en *Ochoteco v. Tribunal Superior*, 88 D.P.R. 517 (1963), a Ochoteco le fue confiscado un vehículo de su propiedad, debido a que mientras era conducido por Daniel Domingo Núñez Mojica, acompañado por otras tres personas, fueron ocupados dentro del vehículo, un revólver inscrito a nombre de Ramón Quiñones López, el cual había sido reportado desaparecido y una pistola, que no aparece inscrita a nombre de nadie.

Daniel Domingo Núñez Mojica, era empleado de Ochoteco, a quien Ochoteco le da un vehículo cargado de mercancía, para que se lleve el vehículo para su casa y no lo use hasta el otro día, cuando debía entregar la mercancía a un cliente. Sin embargo, Núñez Mojica, desobedeciendo las instrucciones de Ochoteco, al llegar a su residencia descarga la mercancía y se lleva el vehículo en compañía de un grupo de amigos.

Luego es detenido por cometer una infracción a la Ley de Tránsito y es entonces cuando se le ocupan las armas. El Tribunal Supremo señala a las páginas 527 y 528:

*"A la luz de nuestras decisiones aun cuando hayan seguido un criterio restrictivo en favor de la confiscación, no podemos convenir con la sala sentenciadora en que situaciones como estas tienen por única contestación el hecho de que la acción va dirigida a la cosa, por lo que los derechos de terceros inocentes, ni están envueltos, ni están protegidos. Una generalización así de la norma de derecho aplicable no es en todos casos procedente. Cada caso debe verse y pesarse a la luz de sus hechos, ya que la naturaleza in rem de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo. Es claro el principio aquí vigente, que en manera alguna desvirtuamos, que aquel que cede o entrega la posesión de un vehículo de ordinario asume el riesgo del uso ilegal que pudiera dársele al mismo. Pero no toda entrega de la posesión de un vehículo tiene iguales motivaciones, ni idéntica justificación, ni la misma necesidad, ni similares propósitos. Este caso debe resolverse por sus particularísimos hechos. Según los estipulados, se trata de una posesión que ocurrió por la necesidad de un negocio."*

Finalmente a la página 529 resuelve el tribunal que *"el caso cae bajo la excepción reconocida que protege el derecho de un tercero inocente".*

Más adelante, en *E.L.A. v. Tribunal Superior, supra,* (1967), Pedro Angel Torres arrienda un vehículo a Nicolás Ortiz, quien es dueño de una panadería. En el contrato de arrendamiento se establecía que Ortiz sería quien pagaría y supervisaría al chofer del vehículo arrendado, Federico Rodríguez Zayas.

El día 22 de septiembre de 1963, Rodríguez Zayas salió en el vehículo a vender el pan y por la tarde estacionó el mismo en el centro de la carretera, por lo que unos agentes de la policía que transitaban por ahí, se detuvieron detrás de Rodríguez Zayas para ver qué ocurría. Rodríguez Zayas, al reconocer a uno de los policías, continuó la marcha y tiró unos papeles al suelo, los cuales fueron recogidos por la policía y resultaron ser una lista de números del juego de la bolita.

A la página 722 de este caso, se dice:

*"El tribunal de instancia se equivocó al aplicar a este caso lo resuelto en Ochoteco, supra. El caso de Ochoteco, caía dentro de la excepción que señalamos en Brañuela ya que los hechos estipulados en el mismo permitían la conclusión de que el infractor había cometido un delito de hurto de uso. La situación de hechos es distinta aquí. El infractor Rodríguez era un agente o empleado del arrendatario del vehículo confiscado. Cometió los actos delictivos mientras conducía el vehículo para vender pan en Orocovis y Villalba. El lugar donde cometió el delito estaba en su ruta. La posesión del vehículo por Rodríguez estaba en ese momento autorizada por el arrendatario del mismo. No hay base para concluir que Rodríguez había cometido el delito de hurto de uso del vehículo en el momento de infringir la Ley de la Bolita. Tampoco protege al tercero el hecho de que Ortiz hubiera prohibido a Rodríguez usar el vehículo para otros fines ni el hecho de que ignorara que Rodríguez usaba el vehículo en relación con el juego prohibido de la Bolita ya que el uso no autorizado de un vehículo por un empleado no protege al dueño del vehículo." Metro Taxicabs v. Tesorero,* 73 D.P.R. 171 (1952).

En *Pueblo v. González Cortés*, 95 D.P.R. 164 (1967), se confiscó un vehículo a Miguel González Cortés, debido a que un teniente de la policía lo sorprendió transportando en dicho vehículo seis listas de las que se usaban para los juegos ilegales de la Bolita o Bolipool. La intervención del policía se debió a que González Cortés conducía a exceso de velocidad y al requerírsele la licencia de conducir, el abrió su cartera y de la misma cayeron unas listas.

En las páginas 171 y 172 se señala:

*"Difícil resulta sostener que el recurrente usaba su vehículo en ese momento en relación con los juegos ilegales prohibidos por la ley, en ausencia de otra evidencia demostrativa que al vehículo se le daba el uso adicional de facilitar o ayudar en alguna forma la operación del juego. La prueba del Pueblo más bien compatible con la conclusión de que se trata de un comprador de tickets de bolipul para jugarlos y que los guarda en su cartera, y que tal vez olvidándose de ese hecho la abre en presencia de la policía para mostrarle su licencia de chofer. Debe resolverse en consecuencia que dentro de las circunstancias concurrentes en este caso no procedía la confiscación del vehículo del recurrente."*

Por otro lado, en *Carlo v. Srio. de Justicia, supra*, (1978), lo que ocurrió fue que Carlo del Toro fue procesado por infracción de la Ley de Bolita, Ley Núm. 220 del 15 de mayo de 1948, 33 L.P.R.A. sec. 1247 y ss. y como resultado del juicio salió absuelto. Por la referida acusación le fue confiscado un vehículo, ya que se alegaba que lo había usado para transportar material de bolita.

Este caso a las páginas 364 y 365 señala:

*"La decisión que hoy tomamos esta estrictamente ceñida a la situación de derecho que se produce al concurrir circunstancias determinantes, a saber: que el acusado es dueño del vehículo confiscado; que su absolución en los méritos inevitablemente comprende la adjudicación de la cuestión central de que no utilizó el vehículo para transportar material prohibido; que la sentencia absolutoria en juicio tiene un valor y trascendencia que amparan no sólo la libertad, sino también el derecho de propiedad del absuelto, y que el automóvil no es por su naturaleza instrumento de crimen y sí un bien mueble destinado al aprovechamiento por su dueño en actividades lícitas. El diseño legislativo prevaleciente en Puerto Rico dentro del cual se complementan las disposiciones confiscatorias de leyes especiales con el procedimiento ordenado en la Ley Uniforme de Confiscación (34 L.P.R.A. sec. 1721 y ss.) mantiene una distancia y una separación de campos entre la conducta del poseedor de la propiedad utilizada en la empresa criminal y el interés del dueño inocente, y una concentración en la cosa o instrumento del crimen en sí como objetivo abstracto del decomiso, indispensables para proteger la seguridad y el bienestar del pueblo contra el crimen y el fraude. La vinculación de procedimientos y la introducción del interés particular del dueño inocente en contraposición al legítimo interés de orden público al que sirve la confiscación, es rara excepción que sólo se concreta en circunstancias de extrema exigencia revestidas de irrecusable validez constitucional, aquí presentes."*

En un caso más reciente, *Alverne Corporation v. Secretario de Justicia*, **92 J.T.S. 79,** lo que sucedió fue que Alverne Corporation, compañía dedicada al alquiler de equipo de transporte de carga, arrendó a XX-Press Freight Forwarders Inc., compañía que brinda servicios de transportación

terrestre, el vehículo que luego es confiscado.

El problema surge porque un chofer empleado por contrato por la arrendataria, recibió instrucciones de su patrono a los efectos de que entregara una carga en el vehículo arrendado y las incumplió. El chofer sin autorización ni conocimiento de su patrono, en lugar de dirigirse a la ruta encomendada por su patrono, hacia Ceiba, se desvió al Residencial Gautier Benítez, en la salida de la carretera que va de Caguas a Cayey.

En dicho lugar el chofer fue sorprendido por la policía mientras realizaba una transacción en violación de la Ley de Sustancias Controladas, por lo que fue arrestado. A la vez le fue confiscado el vehículo que utilizaba, el cual era propiedad de la arrendadora Alverne.

Este caso fue resuelto por sentencia y no se emitió opinión. Sin embargo existe una Opinión de Conformidad emitida por el Juez Asociado Sr. Fuster Berlingeri, a la cual se unen el Juez Presidente Sr. Andréu García y el Juez Asociado Sr. Alonso Alonso. En la misma a la página 9600 se dispone:

*"Al concluir que el arrendador aquí es un tercero inocente lo hacemos conscientes de que nuestra jurisprudencia más reciente ha reiterado la necesidad de atenuar la severidad patibularia del instrumento de la confiscación. Hemos reconocido que precisamente por la naturaleza in rem y punitiva de la acción de confiscación,* **"las confiscaciones no son favorecidas por las cortes y los estatutos autorizándolas son interpretados restrictivamente... de suerte que resulten consistentes con la justicia y los dictados de la razón natural",** *Pueblo v. González Cortés, 95 D.P.R. 164 (1967); Carlo v. Secretario de Justicia, supra. Difícilmente puede decirse que los hechos de este caso proveen base alguna para que se cumplan los propósitos [sic] de disuación que tuvo el legislador de hacerle cara la conducta criminal al empresario que se dedica al tráfico de drogas. Aquí el que sufriría la pena si resolvemos como nos pide el Procurador General no es el traficante que se lucró con el perverso negocio sino un tercero que no tenía ninguna relación real con el asunto. En estas circunstancias, dejar vigente la confiscación no sirve propósito válido alguno; y la razón natural y nuestro sentido de justicia no permiten que la validemos. De más esta [sic] indicar que lo que aquí señalamos se limita a las circunstancias particulares de este caso, que es el que tenemos ante nos, donde existe una relación de patrono y empleado, en virtud de la cual este último viene obligado a seguir las instrucciones de quien lo emplea.*

*Lo que ocurrió en Carlos F. Del Toro Lugo v. E.L.A., supra, (1994), fue que se consolidaron dos casos donde se planteaban las siguientes controversias:*

*¿Se sostiene la confiscación de un vehículo de motor de un tercero cuando por el delito que da base a la confiscación se desestiman los cargos al determinarse que no existe causa probable para acusar al imputado (pasajero del vehículo confiscado)?*

*¿Puede sostenerse la confiscación de un vehículo únicamente mediante la presentación de evidencia que fue suprimida en el proceso criminal por el delito que da base a la confiscación por ser fruto de un registro o allanamiento ilegal?"*

El Tribunal resuelve a la página 163:

*"De conformidad con lo antes señalado, resolvemos que la determinación final y firme respecto a la exclusión o supresión de una evidencia ilegalmente obtenida, hecha en el procedimiento penal por el delito que da base a la confiscación, constituirá cosa juzgada en su modalidad de impedimento colateral por sentencia en cuanto a la admisión de dicha evidencia en la acción de impugnación de confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia."*

El caso más reciente, relacionado con este tema es el de *General Accident Insurance Co. v. E.L.A., supra*, (1994). En el referido caso se plantea *"si una institución bancaria o comercial, que provee financiamiento para un vehículo de motor, que luego es confiscado por estar relacionado con una actividad delictiva, y la compañía aseguradora de la institución que financió dicho vehículo, son terceros inocentes o no, bajo la Ley Uniforme de Confiscaciones".*

Resuelve el Tribunal Supremo que no son terceros inocentes y a la página 412 señala:

*"Aunque reconocemos que entidades financieras como las recurridas, y sus compañías aseguradoras, son terceros con intereses ajenos a los hechos que motivaron la confiscación de los vehículos, venimos obligados a darle curso a la determinación del Estado de confiscar los vehículos que están siendo utilizados para actividades criminales.* Sostener la condición de tercero inocente adoptada por los tribunales de instancia y anular las confiscaciones realizadas en los casos ante nos, debilitaría gravemente el mecanismo de la confiscación y burlaría el propósito del estatuto confiscatorio, privando al Estado del poder de penalizar el uso de tales vehículos, cuando éstos son utilizados como instrumentos del crimen. Este resultado sería drástico, sobretodo en vista de que, en Puerto Rico, la gran mayoría de los vehículos que se adquieren en nuestra isla son comprados mediante préstamos a instituciones bancarias y financieras, y no nos compete a nosotros ordenarlo. Es éste un asunto para la determinación legislativa."* (Enfasis nuestro).

### III
De acuerdo con el desarrollo jurisprudencial, antes reseñado, de la **doctrina del tercero inocente**, podemos resumir que la misma será aplicada dependiendo de los hechos particulares de cada caso.

Se ha reconocido la excepción cuando el propietario no ha puesto el vehículo de manera voluntaria en manos del infractor o cuando ha tomado medidas cautelares expresas para precaver el uso ilegal del vehículo. *Carlos F. Del Toro Lugo v. E.L.A., supra.*

Para la aplicación de esta doctrina el Tribunal tomará en consideración la *"validez del propósito que persigue la confiscación, la razón natural y nuestro sentido de justicia". Carlos F. Del Toro Lugo v. E.L.A., supra,* a la pág. 160.

En el caso ante nuestra consideración los hechos particulares del mismo son: **primero** ocurre una confiscación de un vehículo arrendado, luego de vencido el contrato de arrendamiento.

**Segundo,** la persona a quien le es confiscado el vehículo no era la persona autorizada a manejar el mismo, según se desprende del contrato de arrendamiento. Sólo había sido autorizada para conducir el vehículo, Maritza Cardona de León, quien fue la persona que suscribió el contrato de arrendamiento con la arrendadora *"Caparra".*

**Tercero,** la compañía arrendadora, *"Caparra",* advierte a sus clientes que sus vehículos no pueden ser utilizados para cometer delitos o actos contrarios a las leyes del Estado Libre Asociado.

En la Oposición a Recurso de Apelación se menciona y en el expediente del caso se encuentra el siguiente procedimiento:

*"PROCEDIMIENTO PARA RENTAR UN VEHICULO DE MOTOR EN TARGET RENT-A-CAR SYSTEM - DIVISION DE CAPARRA MOTOR SERVICE, INC.*

*"1. CUANDO EL CLIENTE LLEGA, SE LE INFORMA DE NUESTROS REQUISITOS LOS CUALES ESPECIFICAMOS A CONTINUACION*

*A. TENER 25 AÑOS O MAS.*

*B. LICENCIA VALIDA, LA CUAL ES VERIFICADA.*

*C. VERIFICACION DE SU TARJETA DE CREDITO (V/M/C, DINERS, AMERICAN EXPRESS, DISCOVER).*

*D. VERIFICACION DE SU DIRECCION FISICA.*

*E. VERIFICACION DIRECCION DE SU EMPLEO.*

*F. FINALMENTE SE INSTRUYE AL CLIENTE SOBRE EL BUEN USO QUE DEBERA DARLE A*

*NUESTRA UNIDAD (LO CUAL INCLUYE [sic]*

*1. QUE ASUME LA RESPONSABILIDAD AL DEJARLO MAL ESTACIONADO.*

*2. QUE NO DEBERÁ UTILIZAR EL VEHICULO PARA COMETER NINGUN DELITO PU-BLICO O ACTOS CONTRARIOS A LAS LEYES QUE RIGEN EN EL ESTADO LIBRE ASOCIADO DE PUERTO RICO.*

*3. QUE NOS RESERVAMOS.EL DERECHO A REPOSEER EL VEHICULO. EN. CUALQUIER MOMENTO Y SIN PREVIO REQUERIMENTO, [sic] CUANDO ENTRE OTRAS RAZONES EL VE-HICULO FUERA USADO PARA UN ACTO ILEGAL.*

*4. QUE EL VEHICULO SE ARRIENDA O ALQUILE UNICA Y EXCLUSIVAMENTE PARA FI-NES LICITOS."*

Como vimos, al día de los hechos que provocan la confiscación del vehículo arrendado, ya el **contrato de arrendamiento estaba vencido y la persona que lo conducía no estaba autorizada en el contrato.**

Por tanto si la persona que ostentaba la posesión del vehículo el día de los hechos, no estaba ni directa ni indirectamente autorizada para utilizar el mismo y el contrato de arrendamiento ya estaba vencido, significa que esa persona estaba haciendo **uso ilegal del mismo.**

Aún asumiendo que la arrendataria, Maritza Cardona de León, haya puesto el vehículo en posesión de Jamille Nieves Santiago, no podemos por eso responsabilizar a *"Caparra",* porque al día de la confiscación ya el contrato estaba vencido y ya *"Caparra"* no estaba autorizando el uso del vehículo en cuestión y mucho menos asumiendo responsabilidad por el uso delictivo del mismo.

Los hechos del caso que nos ocupa son muy similares a los de Alverne Corporation, el cual ya reseñamos. Como vimos en Alverne se aplicó la doctrina de tercero inocente, haciendo una analogía con el caso de Ochoteco, antes discutido. Porque en ambos casos el empleado desobedeció sustancial-mente las instrucciones del patrono.

Más aún, a la página 9600 de la opinión de conformidad emitida en el caso de Alverne, se dice que *"[l]a posesión del vehículo por el empleado al momento de su conducta delictuosa era tan contraria a las instrucciones del patrono que se había convertido en ilegal".*

Precisamente eso ocurre con la conducta de Jamille Nieves Santiago, la cual se apartó de las instrucciones que le da *"Caparra"* a sus arrendatarios en cuanto a la prohibición de cometer delitos con los vehículos y peor aún no tenía la autorización de *"Caparra"* para usar el mismo.

Por tanto es forzoso concluir que resolvió correctamente el tribunal de instancia, ya que la arrenda-dora *"Caparra"* es un tercero inocente a toda esta actividad delictiva. Primero, porque el vehículo no fue entregado voluntariamente por la arrendadora *"Caparra"* a la infractora y segundo porque la arrendadora advierte a sus arrendatarios de que no pueden usar los vehículos para actividades delictivas.

El foro de instancia resolvió correctamente que sí era aplicable a este caso la **doctrina del tercero inocente** y por tanto procedía revocar la confiscación en este caso. Por tanto el **primer error señalado no se cometió.**

El **segundo señalamiento de error**, no amerita discusión debido al resultado a que llegamos respecto al primer error señalado.

En cuanto al **tercer señalamiento de error,** sobre la resolución del caso por la vía sumaria, no procede. En el expediente del caso obran documentos que acreditan los términos y condiciones del contrato de arrendamiento, la duración del contrato, quién estaba autorizado a conducir el vehículo y las advertencias que hace la arrendadora sobre el uso permitido y el prohibido del vehículo.

También contiene el expediente, copia de la denuncia en el caso contra Jamille Nieves Santiago, en adición a todos los documentos concernientes a la confiscación. Por ende, todos los hechos se podían apreciar y aquilatar de la prueba documental y lo único que restaba era aplicar el derecho, específicamente en cuanto a si era aplicable o no la doctrina de tercero inocente.

Para concluir, no habiendo controversia de hechos materiales procedía la resolución del caso por la vía sumaria. *Rodríguez Lugo y otros v. Secretario de Hacienda,* **94 J.T.S. 20,** pág. 11551.

### IV

Por los fundamentos antes expuestos, procede confirmar la sentencia del tribunal de instancia de la cual se recurre.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Notifíquese por la vía ordinaria.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 96 DTA 122

**1.** Anejo III del Escrito de Apelación.

**2.** Anejo IV del Escrito de Apelación.

**3.** Anejo VI del Escrito de Apelación.

**4.** Anejo VII del Escrito de Apelación.

**5.** Anejo VIII del Escrito de Apelación.

**6.** Anejo IX del Escrito de Apelación.

**7.** Así aparece en el Anejo X, aunque debe ser: Target-Rent-A-Car System.

**8.** Debe decir Caparra Motor Service, Inc.

**9.** Anejo X al XIII del Escrito de Apelación.

**10.** Anejos XIV y XV.

**11.** Anejo XVI.

**12.** Anejo XVII del Escrito de Apelación.

**13.** Anejos XVIII y XIX.

**14.** Anejo XX y Anejo XXI.

**15.** Anejo XX.

**16.** Anejo XXII.