CARLOS M. OCHOTECO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FAUSTO RAMOS QUIRÓS, JUEZ, demandado; ESTADO LIBRE ASOCIADO DE PUERTO RICO, interventor.

*Número:* C-63-1      *Resuelto:* 5 de junio de 1963

*Félix Ochoteco, Jr.*, abogado del peticionario; *Rodolfo Cruz Contreras, Procurador General Interino,* y *Héctor R. Orlandi, Procurador General Auxiliar,* abogados del interventor.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Éste es un procedimiento que envuelve la confiscación de un vehículo de motor en donde el dueño de dicho vehículo impugnó la validez de la misma ante la Sala de San Juan del Tribunal Superior. Las partes demandante y demandada sometieron el caso a la Sala sentenciadora a base de la siguiente estipulación de hechos que firmaron:

"Comparecen las partes en el caso de epígrafe y por conducto de sus respectivos abogados que suscriben muy respetuosamente, previa la correspondiente aprobación judicial.

### ESTIPULAN:

"Someter, como por la presente someten, el caso de epígrafe sin celebración de juicio y para que se dicte la sentencia que proceda, exclusivamente a base de las siguientes.

### DETERMINACIÓN DE HECHOS

"1.—Que el día 3 de febrero de 1961, entre 10:30 y 11:00 P.M., en la Avenida Fernández Juncos, frente al Muelle #2, se procedió por miembros del cuerpo de la Policía Estatal a la ocupación y confiscación del automóvil marca Chevrolet, modelo 1957, tablilla Núm. 649-727 de la exclusiva pertenencia del demandante, quien como tal lo tenía inscrito en la Secretaría de Obras Públicas del Estado Libre Asociado.

"2.—Que las referidas ocupación y confiscación del citado vehículo en la fecha y sitio antes mencionados tuvo lugar de conformidad con la Ley Núm. 39 aprobada el 4 de julio de 1960 (25 L.P.R.A., 447), habiendo obedecido dichas ocupación y con-

fiscación a que en el citado día 3 de febrero de 1961, y mientras el mismo era ocupado por Daniel Domingo Núñez Mojica, quien lo guiaba, Jesús Negrón Machuca, Reinaldo Pagán García y José González Rodríguez, fueron ocupados dentro del vehículo, y no sobre ninguna de las personas antes dichas, un revólver Colt, calibre 38, inscrito a nombre de Ramón Quiñones López, quien había informado a la Detective que el mismo se le había desaparecido de su residencia, y una pistola que se ignora a favor de quién aparece inscrita.

"3.—Que bajo Criminal Núms. 61-459, 61-460, 61-465, 61-473, y 61-479 se radicaron acusaciones en el Tribunal Superior de P.R., Sala de San Juan, respectivamente contra dichos Daniel Domingo Núñez Mojica, Jesús Negrón Machuca, Reinaldo Pagán García y José González Rodríguez por la portación y posesión de las dos citadas armas que dieron base para la confiscación del citado vehículo a la que se ha hecho referencia anteriormente.

"4.—Que celebrado el 29 de septiembre de 1961 el correspondiente juicio en relación con dichas cinco causas criminales, por sentencias del Hon. Juez Willys Ramos, los acusados fueron declarados no culpables por el fundamento de que fue ilegal el mencionado registro del referido vehículo y en su consecuencia, la ocupación de las dos mencionadas armas.

"5.—Que llegada las 5:00 de la tarde del citado viernes 3 de febrero de 1961, hora de salida de su trabajo del aludido Daniel Domingo Núñez Mojica, quien era empleado del demandante en su negocio de venta de persianas, puertas y cortinas, sito dicho negocio en Cataño, P.R., el citado demandante le dió instrucciones a dicho empleado para que procediera a cargar el expresado vehículo, como lo cargó, con persianas destinadas a ser usadas en una casa que se hallaba edificando el señor Rafael Torrech Ríos en el barrio Juan Sánchez, de Bayamón, P. R. Que el demandante le dió expresas instrucciones a su aludido empleado para que exclusivamente utilizara dicho vehículo así cargado con las mencionadas persianas para que se trasladara en él a su residencia sita en el sitio Sabana del Barrio Pueblo Viejo de Guaynabo, y una vez en su mencionada residencia, no utilizara el vehículo en cuestión hasta temprano en la mañana del sábado 4 de febrero de 1961 en que debía llevar, entregar y descargar su cargamento de persianas en la referida casa en construcción de don Rafael Torrech Ríos ubicada en el sitio antes indicado, y

donde estaría dicho parroquiano del demandante esperando las expresadas persianas con su carpintero para montarlas durante el citado sábado, para lo que era necesario comenzar la labor muy temprano en ese día, que era el único de que disponía el operario que iba a realizar la referida montura.

"6.—Que el empleado antes dicho del demandante, al llegar a su mencionada residencia conduciendo el vehículo motivo de confiscación, una vez que se bañó y cambió de ropa, procedió a descargar las persianas en cuestión en su residencia, y ya vacio dicho vehículo, guiándolo él mismo, invitó a sus amigos los mencionados Jesús Negrón Machuca, Reinaldo Pagán García y José González Rodríguez a irse de fiesta o parranda, como se fueron, acompañados de rameras y estando en varios sitios de diversión tomando bebidas embriagantes y bailando.

"7.—Que mientras aún se hallaban divirtiéndose en la forma antes dicha los citados cuatro ocupantes del vehículo del demandante, fue que el mismo en el día, hora y sitio indicados fue detenido por una supuesta infracción a la Ley de Tránsito y registrado, ocupándose las dos armas antes mencionadas y arrestándose a sus aludidos ocupantes, no encontrándose entre éstos en momento alguno el aquí demandante, ni el citado cargamento.

"8.—Que la Oficina de Transporte por carta de fecha 16 de febrero de 1961, pero puesta al correo al día siguiente, informó al demandante que el valor del citado vehículo era el de $1,450.00.

### SUPLICA

"MUY RESPETUOSAMENTE solicitan las partes de este Hon. Tribunal:

"a) Que previa aprobación de la presente Estipulación tenga el presente caso por sometido para sentencia.

"b) Que se le conceda 10 días al demandante para radicar un Memorándum, e igual término al demandado para replicarlo.

"San Juan, P.R., y a 12 de Sept. de 1962.

SECRETARIO DE JUSTICIA
por: (fdo.) Julia C. Marchand
          Julia Carmen Marchand
          Fiscal Especial

                (Fdo.) Félix Ochoteco Jr.
                     FELIX OCHOTECO, JR.
                     Abogado del demandante"

A tenor de los hechos estipulados, la Sala sentenciadora dictó sentencia con las siguientes conclusiones de derecho:

"—: CONCLUSIONES DE DERECHO: —

"Hemos dado cuidadoso estudio al memorial sometido por la parte demandante quien en plausible esfuerzo nos invita a que procedamos a hacer una distinción entre el caso de autos y la jurisprudencia invariable de nuestro Tribunal Supremo en casos de confiscación de vehículos de motor.

"Si bien el planteamiento del demandante está saturado de lógica, sin embargo de conformidad con el estado de la jurisprudencia en nuestra jurisdicción, todo procedimiento de confiscación de un vehículo por ir dirigido contra éste, y no contra su dueño, es un 'in rem' por lo que, los derechos de terceros inocentes, ni están envueltos, ni están protegidos.

> "*General Motors Acceptance Corp.* v. *Brañuela, 61 D.P.R. 725; General Motors Acceptance* v. *Tribunal de Distrito, 70 D.P.R. 945; Stuckert Motor Co.* v. *Tribunal de Distrito 74 D.P.R. 527* y *Colón* v. *Secretario de Hacienda, 79 D.P.R. 859 (Per Curiam); cf. Downs* v. *Porrata, Fiscal, 76 D.P.R. 611.*

"Procede declarar SIN LUGAR la demanda, con costas."

Expedimos *certiorari* para revisar el anterior fallo a tenor de lo dispuesto en el Art. 2 (a) de la Ley Núm. 39 de 4 de junio de 1960.

El Art. 37 de la Ley Núm. 17 de 19 de enero de 1951, según quedó enmendada por la Núm. 39 de 4 de junio de 1960, dispone que "el Secretario de Justicia confiscará cualquier vehículo, bestia o embarcación marítima o aérea en que se cargue, descargue, transporte, lleve o traslade; que se use para cargar, descargar, transportar, llevar o trasladar; o que se sorprenda cargado, o en el momento de cargar, o descargar, o de estar transportando, llevando o trasladando, cualquier arma en violación de esta ley." Dispone igualmente el Art. 37 que para la confiscación y disposición de vehículos, bestias y embarcaciones marítimas o aéreas se seguirá el procedimiento establecido por la ley conocida como "Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones".

La referida Ley Uniforme autoriza a los dueños de la propiedad confiscada o a los que tengan algún derecho o interés en la misma a *impugnar* la confiscación, debiendo resolverse las cuestiones que se susciten y tramitarse los demás procedimientos de la misma manera que si se tratase de una acción civil ordinaria. La propiedad confiscada debe ser tasada dentro de los 10 días siguientes a la ocupación y la razonabilidad de la tasación puede discutirse en el pleito. Permite el procedimiento que la parte demandante preste fianza por el importe de esta tasación, y aprobada la misma el Tribunal ordenará que los bienes sean entregados al dueño. Si se admite fianza no se permite la posterior devolución de los bienes, sino que la fianza responderá de la confiscación, de sostenerse la legalidad de ésta.

A tenor del cuadro que plantean los hechos estipulados, el problema que se suscita queda circunscrito al hecho de si el demandante es el tercero inocente protegido de acuerdo con la doctrina aplicable en situaciones como éstas. Una de las primeras, sino la primera expresión sobre este particular, la hicimos en *Estados Unidos* v. *Nelson,* 44 D.P.R. 346 (1932). Nelson era un vendedor de automóviles que entregó un vehículo a un comprador para que lo probara. Éste no lo devolvió en tiempo y por el contrario a él se le arrestó al día siguiente, día de Nochebuena, transportando una botella de champaña, y hubo la correspondiente confiscación del vehículo. Al revocar la sentencia que sostuvo la confiscación, dijimos en ese caso:

"El agente vendedor que permitió que el chauffeur sacara el automóvil para probarlo le había conocido por espacio de un año como empleado del doctor Vélez López. Nada hay que indique que el chauffeur hubiese sido anteriormente culpable de mala conducta. El agente vendedor no tenía conocimiento de nada que desacreditara al chauffeur y no tenía razón alguna para sospechar que éste fuese un contrabandista. Nada había que pudiera poner a Nelson o a su agente vendedor a la expectativa. El chauffeur obtuvo posesión del automóvil el 23 de diciembre. Se suponía que lo devolviera antes de las 6 de la tarde. Al siguiente día se le buscó infructuosamente. La primera noticia recibida por Nelson

respecto al paradero del chauffeur fué que éste había sido arrestado el día de Nochebuena por transportar ilegalmente una botella de champaña. Cuando el vendedor permitió que el chauffeur sacara el automóvil por varias horas dos días antes de Navidad, no tenía razón alguna para anticipar que su comprador en perspectiva se quedaría con el carro durante los días de fiesta, o que los funcionarios de prohibición se incautarían de éste, y Nelson no asumió el riesgo de la confiscación del vehículo."

Aunque en esta opinión no se citan casos ni se elaboró el concepto, indudablemente seguimos una doctrina ya sentada en muchos estados en igual sentido. Posteriormente, en los casos de *General Motors Acceptance* v. *Brañuela*, nos pronunciamos más específicamente, y a la vez optamos por seguir uno de los varios criterios vigentes, posiblemente el más restrictivo. En la opinión original de *Brañuela*, 60 D.P.R. 696 (1942), interpretamos el Art. 62 de la Ley de Bebidas Embriagantes. (¹) Se trataba de un vehículo vendido en venta condicional que fue confiscado mientras conducía 35 galones de alcohol. La vendedora condicional había cedido el contrato a la General Motors Acceptance y ésta llevó la acción corriente de reposesión contra la compradora Petra Brañuela y el Tesorero. Invocó el incumplimiento del contrato por parte de la compradora al usar o permitir que se usara el vehículo para transportar licor en violación de la Ley. Al confirmar la sentencia que declaró sin lugar la reposesión, dijimos por voz del Juez Sr. De Jesús:

"El precepto transcrito es terminante en cuanto autoriza al Tesorero a confiscar cualquier vehículo, bote, etc., que se capture transportando espíritus destilados o bebidas alcohólicas sobre los cuales no se hubieren pagado los impuestos prescritos por la ley. Estatutos como el que nos ocupa han recibido distintas inter-

---

(¹) Art. 62.—"El Tesorero queda por la presente autorizado para confiscar cualquier vehículo, bote, lancha, o cualquier embarcación marítima o aérea que se capture cargado o en el momento de cargar o de estar transportando, llevando, o trasladando espíritus destilados o bebidas alcohólicas fabricadas. . . . y sobre los cuales no se hubieren pagado los impuestos prescritos por esta ley; y los mismos serán vendidos en pública subasta . . . etc. . . ."

pretaciones en lo que respecta a los derechos que sobre el vehículo tuvieren terceras personas que no hubieren tenido conocimiento ni consentido expresa o implícitamente en el uso ilegal de la propiedad. Tanto en su alegato como en su informe oral la apelante parte de la base de que ella no tuvo conocimiento ni en forma alguna consintió en el uso ilegal del vehículo y pretende que interpretemos el artículo 62, supra, en el sentido de que sus disposiciones no le son aplicables, y por lo tanto sus derechos no pueden ser afectados por la infracción de ley cometida por la compradora condicional o su agente. *No descansa sobre una base sólida la argumentación de la apelante, pues en ninguna forma consta de los autos que ella sea el tercero inocente a que se refiere la jurisprudencia por ella invocada.* El mero hecho de que la apelante sea la cesionaria de los derechos de la vendedora condicional no implica necesariamente *que no haya podido tener conocimiento con anterioridad a la infracción que dió lugar a la confiscación del vehículo, de que éste fuese usado para tales fines, ni tampoco impide que expresa o implícitamente consintiera a tal uso, no reposeyéndolo del infractor.*

"En el presente caso la apelante *no nos ha puesto en condiciones de resolver la cuestión planteada en su alegato, pues no tenemos base para asumir que sea ella un tercero inocente, y a ella—que ahora lo afirma—incumbía alegarlo y probarlo. El procedimiento establecido por la apelante es de carácter civil y no existe presunción alguna de inocencia que pudiera justificar la omisión de que antes se ha hecho referencia.* Siendo ello así, no tiene la apelante más derecho que la apelada Brañuela para impedir la confiscación del vehículo.

.  .  .  .  .  .  .  .  .

"Sentados estos principios y volviendo a las alegaciones de las partes, forzoso es convenir con la corte sentenciadora en que la petición no aduce hechos constitutivos de causa de acción. *La apelante, como ya hemos dicho, no expuso en forma alguna hechos que pusieran a la corte inferior en condiciones de determinar si en efecto el artículo 62, supra, no le era aplicable.* No habiéndose demostrado tal estado de hechos, la situación de la apelante, conforme resulta de la petición, es a los efectos legales la misma de Petra Brañuela, y pudiéndose, a pesar de los derechos de esta última, confiscar el vehículo, también podría ser confiscado no obstante los derechos de la apelante, sin violentar en uno u

otro caso el precepto claro del artículo 62." (Énfasis puesto.)

En la opinión dictada en reconsideración de este fallo, 61 D.P.R. 725, el propio Sr. De Jesús rectificó este último concepto y sostuvimos que la General Motors tenía a su favor una presunción de inocencia bajo la doctrina de que en procedimientos *civiles* en que está envuelta la comisión de un delito o conducta criminal, la inocencia y la buena fe se presumen. Llamamos la atención, citando algunos ejemplos, al desacuerdo que había en la jurisprudencia con respecto a los derechos de terceros inocentes cuando el estatuto guarda silencio sobre tales derechos, y optamos por la norma federal, más restrictiva que la de muchos estados, al efecto de que siendo el procedimiento de confiscación uno dirigido contra el vehículo, los derechos de terceros inocentes no estaban protegidos, excepto en aquellos casos en que se demostrara que la posesión del vehículo había sido obtenida por el infractor sin el consentimiento expreso o implícito del dueño o tercero inocente, y dimos como ilustración el caso del vehículo que ha sido hurtado. Dijimos que si el dueño o tercero interesado directa o indirectamente ha puesto el vehículo en posesión del infractor sus derechos corren la suerte del uso a que el poseedor pueda someter el vehículo. Se reafirmó la decisión original que sostuvo la confiscación.

Posteriormente, en *Sánchez* v. *Tesorero*, 72 D.P.R. 133 (1951), sostuvimos la sentencia que anuló la confiscación. Los hechos: El dueño de un automóvil público tomó un pasajero que traía varios paquetes, que fueron puestos en el piso del vehículo. Ahí había ron cañita. Se denunció a conductor y pasajero y se confiscó el vehículo. La corte inferior concluyó que la evidencia demostraba que el dueño y conductor del vehículo no tuvo conocimiento ni participación en el transporte del licor creyendo que se trataba de bultos ordinarios. Dijo el propio Juez Sr. De Jesús después de comparar los hechos del caso de *Brañuela* :

"No obstante la diferencia entre los hechos del presente caso y el de *General Motors Acceptance* v. *Brañuela,* supra, la doctrina

establecida en este último, nos da la luz necesaria para la solución del problema que ahora nos ocupa. Es claro, a nuestro juicio, que si la confiscación no procede cuando la persona a cargo del vehículo ni el reclamante tienen conocimiento ni motivos para conocer el uso ilegal para el cual se utilizó el vehículo, tampoco debe proceder la confiscación cuando la persona a cargo del vehículo es el propio dueño quien es inocente de la infracción como sucede en el presente caso. Parece conveniente consignar que la culpabilidad o inocencia de la persona a cargo del automóvil, es una cuestión de hecho, que debe surgir de la evidencia. *Vandevander v. United States*, 172 F.2d 100 (5th Cir. 1949)."

En *Metro Taxicabs, Inc.* v. *Tesorero*, 73 D.P.R. 171 (1952), se confiscó un vehículo propiedad de la Metro Taxicabs, Inc. mientras era utilizado para transportar bebidas alcohólicas sin que se hubiesen pagado los correspondientes derechos de rentas internas. Después de analizar la prueba, dijo este Tribunal:

"Ante estos hechos, fácil es advertir que la conclusión del tribunal inferior, en el sentido de que 'Prácticamente lo que hubo en este caso fué hurto de uso del taxímetro'—luego de expresar que 'Como cuestión de hecho, por tanto, el uso o la posesión del taxímetro por parte de Ángel Gómez fueron ilegales y no autorizados'—es errónea. El vehículo estaba en posesión de Alicea, empleado de la demandante, y Gómez vino en posesión del mismo por autorización de Alicea, quien se lo entregó a Gómez para que fuera 'a buscar un viaje'. Haciendo caso omiso ahora de la explicación que Alicea dió a la gerente–tesorera de la empresa en cuanto a lo ocurrido, véase nota 4, la declaración del propio Alicea revela que al regresar Gómez con 'el contrabando' dentro del automóvil al sitio en que aquél se había quedado tomando café y le esperaba, Alicea subió al mismo 'porque tenía que ir a entregar el carro', *no obstante haber advertido que el automóvil venía 'lleno de ron'*. Aunque a la pregunta del juez inferior de '¿Usted protestó o no protestó?' contestó 'Sí', no dijo, sin embargo, en qué había consistido su protesta ni cómo la había manifestado. Por el contrario, *su propio testimonio es revelador de su consentimiento—ya conocida la existencia del 'contrabando' en el automóvil—a* que Gómez continuara en la posesión y control del mismo de ahí en adelante, permitiendo que se le utilizara en la

transportación de ron clandestino.

"De acuerdo con la declaración de Alicea—que es en la que basa exclusivamente sus conclusiones de hecho el juez inferior—y sin entrar a considerar otros extremos que surgen del resto de la propia prueba de la demandante, es evidente que se trata en este caso, a lo sumo, del uso no autorizado de un vehículo por el empleado a quien le fue confiado, quien lo entregó a, y consintió y permitió que otra persona lo usara ilegalmente. Esa circunstancia, sin embargo, no protege a la demandante . . ." (Énfasis suplido.)

Se hizo referencia al caso de *Brañuela* y dijimos finalmente:

"Pero evidentemente ninguna de esas situaciones existe en el caso de autos. Aquí el vehículo no fue hurtado a la demandante, ni a su empleado—Alicea. Éste lo entregó a Gómez—aun cuando fuera en violación de reglas de dicha empresa—y Gómez *con su conocimiento y consentimiento utilizó el vehículo en la transportación del ron clandestino . . .*" (Énfasis suplido.)

En *Estado Libre Asociado* v. *Tribl. Superior*, 76 D.P.R. 842 (1954), sostuvimos la confiscación de un vehículo en violación de la Ley de Armas. La dueña lo tenía dedicado al servicio público y era conducido por un empleado suyo. Dijimos en ese entonces:

". . . El propio tribunal recurrido concluye que el conductor del vehículo tenía 'motivos fundados para creer que el arma se está transportando ilegalmente y que el vehículo se utilizó para los fines de la transportación ilegal de dicha arma de fuego.' Si bien el chófer Colón no tenía sobre su persona el revólver cuando éste fue ocupado por el cabo Pierantoni, *es lo cierto que su conocimiento de que Feliciano portaba ilegalmente un arma lo convirtió en un copartícipe del hecho ilegal de su transportación.*" (Énfasis suplido.)

A la luz de nuestras decisiones aun cuando hayan seguido un criterio restrictivo en favor de la confiscación, no podemos convenir con la Sala sentenciadora en que situaciones como éstas tienen por única contestación el hecho de que la acción va dirigida a la cosa *res*, por lo que los derechos de terceros inocentes, ni están envueltos, ni están protegidos.

Una generalización así de la norma de derecho aplicable no es en todos los casos procedente. Cada caso debe verse y pesarse a la luz de sus hechos, ya que la naturaleza *in rem* de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo. Es claro el principio aquí vigente, que en manera alguna desvirtuamos, que aquel que cede o entrega la posesión de un vehículo de ordinario asume el riesgo del uso ilegal que pudiera dársele al mismo. Pero no toda entrega de la posesión de un vehículo tiene iguales motivaciones, ni idéntica justificación, ni la misma necesidad, ni similares propósitos. Este caso debe resolverse por sus particularísimos hechos. Según los estipulados, se trata de una posesión que ocurrió por la necesidad de un negocio. El Gobierno aceptó a través de su estipulación que el demandante dio a su empleado "expresas instrucciones" sobre el uso del vehículo "exclusivamente" para el fin lícito que se menciona en dicha estipulación. También, "que no utilizara el vehículo en cuestión" hasta la mañana siguiente en que debía hacer la entrega del material cargado en el mismo.

■ La Ley Núm. 56 de 16 de junio de 1956 enmendatoria del Art. 444a del Código Penal (hurto de uso) estatuyó que aquel que *intencionalmente*, sin la autorización del dueño o de la persona que lo represente, *tomar*e un automóvil u otro vehículo de motor "con el objeto de usar el mismo temporalmente", es culpable de delito menos grave; y si la persona cometiere o intentare cometer otro delito durante tal uso, entonces es reo de delito grave. Distinto a los hechos en el caso de la *Metro Taxicabs*, en donde no podría decirse que se cometió un delito de hurto de uso por la forma en que el representante del dueño puso al infractor en posesión del vehículo, los hechos estipulados en este caso permiten otra conclusión. Desde que el empleado descargó el material del vehículo que tenía bajo su custodia con la intención de usarlo, como lo usó, su acción tuvo todas las características de un hurto de uso. Nada vemos en el lenguaje del Art. 444a según

fue enmendado que implique que la conversión a un uso ilegal de un automóvil según dicho artículo, no pueda ocurrir en las circunstancias que demuestran los hechos del caso de autos. A la luz de los hechos estipulados, se puede razonablemente inferir que el caso cae bajo la excepción reconocida que protege el derecho de un tercero inocente.

*Se revocará la sentencia recurrida y se dictará otra anulando la confiscación.*