EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Toyota Credit y Universal Insurance Company<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | Certiorari<br><br>2016 TSPR 56<br><br>195 DPR ____ |

Número del Caso: CC-2014-845

Fecha: 28 de marzo de 2016

Tribunal de Apelaciones:

Región Judicial de Caguas – Humacao, Panel IX

Oficina de la Procuradora General:

Lcda. Karla Pacheco Alvarez
Subprocuradora General

Lcda. Tanaira Padilla Rodríguez
Subprocuradora General

Abogados de la parte Recurrida:

Lcda. Annette M. Prats Palerm

Materia: Sentencia con Opinión de Conformidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Toyota Credit y Universal
Insurance Company

    Recurridos

      v.                   CC-2014-0845

Estado Libre Asociado de
Puerto Rico

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 28 de marzo de 2016

El 4 de octubre de 2012, la Policía de Puerto Rico ocupó un vehículo Toyota "Yaris", dado que éste presuntamente fue utilizado en violación al artículo 404 de la *Ley de armas de Puerto Rico*, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2404, y el artículo 21 de la *Ley para la protección de la propiedad vehicular de 1987*, Ley Núm. 8 de 5 de agosto de 1987, 9 L.P.R.A. sec. 3219. Luego de los trámites de rigor, el Estado Libre Asociado de Puerto Rico (ELA) confiscó el vehículo en cuestión.

Así las cosas, el 9 de noviembre de 2012, Universal Insurance Company (Universal), quien adquirió los derechos sobre el vehículo confiscado, presentó una demanda de impugnación de confiscación ante el foro primario. Acaecidas varias incidencias procesales, Universal presentó una moción de sentencia sumaria. En ésta, adujo que, debido a que la acción penal relacionada a los hechos que motivaron la confiscación no prosperó, procedía declarar con lugar la demanda de impugnación de confiscación.

El ELA, por su parte, se opuso. Por tanto, señaló que el carácter *in rem* de la confiscación en nuestra jurisdicción, así como la independencia de ésta con relación a cualquier otro procedimiento eran razones

suficientes para declarar sin lugar la moción presentada por Universal. Ello, en virtud de los artículos 8 y 15 de la *Ley uniforme de confiscaciones de 2011*, 34 L.P.R.A. secs. 1724e & 1724*l*. Asimismo, el ELA señaló que Universal no rebatió la presunción de legalidad y corrección que dispone dicho estatuto.

El 18 de febrero de 2014, el foro primario emitió una sentencia declarando con lugar la demandad de impugnación de confiscación presentada por Universal. El ELA, inconforme, recurrió ante el Tribunal de Apelaciones. El foro apelativo intermedio, por su parte, confirmó la sentencia recurrida.

En consideración de lo anterior, el 6 de octubre de 2014, el ELA acudió ante este Foro. En esencia, planteó que el resultado favorable en la acción penal relacionada a los hechos que motivaron la confiscación no permite disponer sumariamente de la demanda de impugnación de confiscación presentada por Universal. Este Tribunal, por su parte, expidió el recurso en cuestión.

Evaluados los argumentos presentados por las partes, y estando el Tribunal igualmente dividido, se dicta sentencia y se confirma el dictamen del foro apelativo intermedio cuya revisión nos fue solicitada.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de Conformidad. La Jueza Presidenta Oronoz Rodríguez hace constar la siguiente expresión:

> "La Jueza Presidenta Oronoz Rodríguez está conforme por entender que procedía declarar con lugar la demanda de impugnación de confiscación y ordenar la devolución del vehículo. Ello, en vista de que la causa penal relacionada con la confiscación no prosperó."

La Jueza Asociada señora Pabón Charneco hace constar la siguiente expresión:

> "La Jueza Asociada señora Pabón Charneco está conforme con el dictamen emitido por este Tribunal por los fundamentos esbozados en su Opinión de conformidad emitida en Banco Bilbao Vizcaya et al. v. ELA, CC-2012-0767, res. el 18 de marzo de 2016."

El Juez Asociado señor Estrella Martínez hace constar la siguiente expresión:

"El Juez Asociado señor Estrella Martínez está conforme con el dictamen emitido por este Tribunal por los fundamentos contenidos en su Voto Particular Disidente emitido en <u>Bco. Bilbao Vizcaya et al. v. ELA et al.</u>, 2015 TSPR 152, 194 DPR ___ (2015)."

El Juez Asociado señor Martínez Torres disiente del resultado alcanzado en esta, por los fundamentos expuestos en la Opinión disidente del Juez Asociado señor Rivera García en CC-2012-0767 <u>Banco Bilbao Vizcaya, et al., v. Estado Libre Asociado, et al</u> y en su Opinión de conformidad en CC-2013-1077 <u>Mapfre Praico Insurance Company y otros v. E.L.A</u>.

El Juez Asociado señor Kolthoff Caraballo disiente por las razones esbozadas en la Opinión disidente del Juez Asociado señor Rivera García en <u>Banco Bilbao Vizcaya, *et al.*, v. Estado Libre Asociado de Puerto Rico, *et al.*</u>, res. el 18 de marzo de 2016.

El Juez Asociado señor Rivera García hace constar la siguiente expresión:

"El Juez Asociado señor Rivera García hace constar la siguiente expresión: Disiento de la sentencia que antecede por los fundamentos que expuse en la Opinión Disidente que emití en CC-2012-0767 <u>Banco Bilbao Vizcaya, et al., v. Estado Libre Asociado de Puerto Rico, et al.</u>, res. el 18 de marzo de 2016."

El Juez Asociado señor Feliberti Cintrón hace constar que disiente del resultado alcanzado por los fundamentos expuestos en la Opinión disidente del Juez Asociado señor Rivera García en CC-2012-0767 <u>Banco Bilbao Vizcaya, *et al.* v. E.L.A.</u> y en su Opinión de conformidad en CC-2013-1077 <u>Mapfre Praico Insurance Company y otros v. E.L.A.</u>

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Toyota Credit y Universal Insurance Company<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2014-0845 |

"[I] disapprove of confiscations. If some have insisted, that they were a restraint to vengeance, and the violence of particulars, they have not reflected, that though punishments be productive of good, they are not, on that account, more just; to be just, they must be necessary. Even an useful injustice can never be allowed by legislator . . . .

The law which ordains confiscations, sets a price on the head of the subject, with the guilty punishes the innocent, and by reducing them to the indigence and despair, tempts them to become criminal."[1]

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 28 de marzo de 2016

En esta ocasión, nos corresponde dirimir la relación entre un procesamiento penal y un proceso civil de confiscación, cuando ambos se relacionan con

---

[1] Cesare Beccaria, *An Essay on Crimes and Punishments* 59 (1775) (International Pocket Library, 2nd ed. 1992).

un mismo núcleo de hechos. En particular, debemos dilucidar la aplicación de la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, en un proceso civil de impugnación de confiscación, al amparo de las disposiciones de la *Ley uniforme de confiscaciones de 2011*, 34 L.P.R.A. secs. 1724-1724w. Esto, cuando la causa penal relacionada con los hechos que motivan la confiscación no prospera.[2]

I

El 4 de octubre de 2012, la Policía de Puerto Rico ocupó un vehículo Toyota "Yaris" por presuntamente haber sido utilizado en contravención al artículo 404 de la *Ley de sustancias controladas de Puerto Rico*, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2404, y del artículo 21 de la *Ley para la protección de la propiedad vehicular de 1987*, Ley Núm. 8 de 5 de agosto de 1987, 9 L.P.R.A. sec. 3219.[3]

---

[2] De entrada, conviene destacar que la controversia puntual que le compete resolver a este Tribunal se refiere a todas aquellas instancias en que el encausamiento penal de determinada persona no prospera y existe un proceso de confiscación concomitante a los mismos hechos que, en primer lugar, suscitaron el procesamiento penal. Por tanto, por ser innecesario, no nos expresaremos en torno a los posibles efectos que pudiera tener una absolución sobre un proceso de confiscación bajo el esquema estatutario establecido en virtud de la *Ley uniforme de confiscaciones de 2011*.

[3] Valga señalar que el artículo 404 de la *Ley de sustancias controladas de Puerto Rico* tipifica como delito la posesión de sustancias controladas. El artículo 21 de la *Ley para la protección de la propiedad vehicular*, por su parte, tipifica como delito la mutilación, alteración, destrucción o

El Estado Libre Asociado de Puerto Rico (ELA) emitió las notificaciones de rigor y procedió a confiscar el vehículo de motor.

El 9 de noviembre de 2012, la recurrida –Universal Insurance Company (Universal), cesionaria de los derechos sobre el vehículo en cuestión– presentó una demanda de impugnación de confiscación ante el Tribunal de Primera Instancia. Luego de varios trámites procesales, el 12 de julio de 2013, Universal presentó una moción de sentencia sumaria. En ésta, alegó que, dado que la causa penal relacionada con los hechos que motivaron la confiscación no prosperó, procedía declarar con lugar la demanda de impugnación de confiscación. Esto es, en función de las circunstancias particulares de este caso, la determinación de "no causa para acusar" en la vista preliminar en alzada habría de surtir efectos sobre el proceso civil de confiscación.

El ELA, por su parte, se opuso. Entre otros particulares, señaló que los artículos 8 y 15 de la *Ley uniforme de confiscaciones de 2011*, 34 L.P.R.A. secs. 1724e & 1724*l*, establecían expresamente el carácter *in rem* del proceso civil de confiscación y su total independencia con relación a cualquier otro procedimiento relacionado con los mismos hechos. Además, el ELA solicitó la desestimación de la demanda, puesto que la recurrida no había presentado

---

modificación de determinadas piezas de un vehículo de motor.

prueba que rebatiera la presunción de corrección y legalidad de la confiscación que establece la *Ley uniforme de confiscaciones de 2011*.

El 18 de febrero de 2014, el Tribunal de Primera Instancia dictó sentencia a favor de la recurrida. Por tanto, razonó que la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, era de aplicación y que la desestimación de la acción penal relacionada a los mismos hechos que motivaron la confiscación impugnada permitía disponer sumariamente de ésta.

Inconforme, y luego de haber presentado oportunamente una moción de reconsideración en el foro primario, el 2 de junio de 2014, el ELA recurrió al Tribunal de Apelaciones. Ante dicho foro, replicó los argumentos esgrimidos anteriormente, a los efectos de que la aplicación de la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, era contraria a las disposiciones de la *Ley uniforme de confiscaciones de 2011*. La recurrida, por su parte, reafirmó que la doctrina de cosa juzgada en la referida modalidad era aplicable al caso en cuestión. Asimismo, ésta resaltó el carácter punitivo de este tipo de proceso y adujo que el mismo debería entenderse como una excepción al mandato constitucional que prohíbe la toma de propiedad privada para fines públicos sin justa compensación.

El foro apelativo intermedio confirmó el dictamen recurrido. Razonó, pues, que, conforme lo resuelto por este Tribunal en *Ford Motor v. E.L.A.*, 174 D.P.R. 735, 742 (2008), aplicaba la doctrina en cuestión y, en consecuencia, procedía declarar con lugar la demanda de impugnación de la confiscación cuando el proceso penal relacionado con ésta no prospera.

El 6 de octubre de 2014, el ELA recurrió ante este Tribunal e hizo el siguiente señalamiento de error:

> Erró el Tribunal de Apelaciones al utilizar el resultado favorable del acusado en el caso criminal como fundamento para confirmar el dictamen del Tribunal de Primera Instancia declarando con lugar la demanda impugnando la confiscación bajo la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia, a pesar de las disposiciones contenidas en la *Ley uniforme de confiscaciones de 2011*, que expresamente establecen la independencia de la acción civil confiscatoria de la acción penal.

Habiendo repasado los hechos medulares del caso que nos ocupa, procede examinar las normas pertinentes con tal de dirimir la relación entre un proceso penal y un proceso civil de confiscación, cuando ambos se relacionan con los mismos hechos. Esto, al amparo de la *Ley uniforme de confiscaciones de 2011*, según enmendada.

II

A

La confiscación es el acto en virtud del cual el Estado se apropia de bienes que han sido utilizados en

la comisión de algún delito debidamente tipificado en el Código Penal o en leyes especiales que dispongan expresamente para ello. *Rodríguez Ramos v. E.L.A. y otros*, 174 D.P.R. 194, 202 (2008); *Centeno Rodríguez v. E.L.A.*, 170 D.P.R. 907 (2007); *First Bank v. E.L.A.*, 164 D.P.R. 835, 842 (2005); *Suárez v. E.L.A.*, 162 D.P.R. 43, 51 (2004); *Cooperativa v. E.L.A.*, 159 D.P.R. 37, 43 (2003); *Del Toro Lugo v. E.L.A.*, 136 D.P.R. 973, 980-81 (1994). De otra parte, la doctrina reconoce dos modalidades a través de las cuales el Estado puede llevar a cabo la confiscación, a saber: mediante una acción *in personam* o una acción *in rem*. *Suárez*, 162 D.P.R. en las págs. 51-52.

En lo que respecta a la primera de estas modalidades, la acción *in personam* –conocida, también, como confiscación criminal– permite que el Estado "impon[ga] la confiscación como *una pena adicional*" contra el imputado de determinado delito si éste resultara convicto. *Del Toro Lugo*, 136 D.P.R. en la pág. 981. Así, bajo esta modalidad "la confiscación . . . forma parte integral del procedimiento criminal contra el propietario de la cosa a ser incautada, y la convicción de éste es, precisamente, el fundamento que origina la confiscación". *Id.* en las págs. 981-82.

Por otro lado, se le reconoce al Estado la prerrogativa de articular el proceso de confiscación como una acción *in rem* –conocida como confiscación

civil-.[4] Bajo este supuesto, "el procedimiento de confiscación va dirigido contra la cosa (*in rem*), y no contra el dueño . . .". *Id.* en la pág. 987; *Cooperativa*, 159 D.P.R. en la pág. 43. Es decir, "se trata de una ficción jurídica mediante la cual -en cierta medida- se culpa a la propia cosa por su participación en el delito. El derecho del Estado de tomar posesión de la cosa surge del mal uso que se le haya dado a ésta". *Suárez*, 162 D.P.R. en la pág. 52. Asimismo, este tipo de confiscación se conceptúa como "independiente de la acción penal que la motivó". *Cooperativa*, 159 D.P.R. en las págs. 83-84 (citas omitidas).

Es menester señalar que, en cuanto a esta modalidad de confiscación, "la naturaleza *in rem* de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo". *Ochoteco v. Tribunal Superior*, 88 D.P.R. 517, 528 (1963). Tal carácter punitivo ha sido consistentemente reiterado por la jurisprudencia de este Tribunal. Véase *Mapfre v. E.L.A.*, 188 D.P.R. 517, 525 (2013); *Coop. Seg. Mult. v. E.L.A.*, 180 D.P.R. 655, 663-664, 668, 680 (2011); *Ford Motor*, 174 D.P.R. en las págs. 738, 741 (2008); *Centeno Rodríguez*, 170 D.P.R. en la pág. 913. *Del Toro Lugo*,

---

[4] Para un breve recuento histórico sobre el surgimiento de la confiscación civil, es decir, la modalidad *in rem* de confiscación, véase Michael Van den Berg, *Proposing a Transactional Approach to Civil Forfeiture Reform*, 163 Univ. Penn. L. Rev. 867, 872-878 (2015); Jimmy Gurule, *Introduction: The Ancient Roots of Modern Forfeiture Law* (Symposium: Federal Asset Forfeiture Reform), 21 J. Legis. 155, 156-157 (1995).

136 D.P.R. en la págs. 986-87, 992-993; *Carlo v. Srio. de Justicia*, 107 D.P.R. 356, 362 (1978); *Pueblo v. González Cortés*, 95 D.P.R. 517 (1967) (citando a *Ochoteco*, 88 D.P.R. 517; *One Plymouth Sedan v. Pennsylvania*, 380 U.S. 693 (1965)).[5] Esto, puesto que "la confiscación no sólo tiene la intención de evitar que el vehículo o la propiedad confiscada pued[a] volver a utilizar[se] para fines ilícitos, sino que también sirve de castigo para disuadir a los criminales". *Centeno Rodríguez*, 170 D.P.R. en la pág. 913; véase, también, *Coop. Seg. Mult.*, 180 D.P.R. en las págs. 663-664; *Ford Motor*, 174 D.P.R. en la pág. 74; *First Bank*, 164 D.P.R. en la pág. 843; *Cooperativa*,

---

[5] Valga señalar, además, que la jurisprudencia federal también ha reconocido el carácter punitivo de los procedimientos de confiscación civil, *in rem*. Véase, por ejemplo, *Austin v. U.S.*, 509 U.S. 602, 618 (1993) ("We conclude, therefore, that forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment.") (citas omitidas); *One 1958 Plymouth Sedan v. Com. of Pa.*, 380 U.S. 693, 700 (1965) ("[A] forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceding, is to penalize for the commission of an offense against the law."). *Cf. U.S. v. Usery*, 518 U.S. 267 (1996) (reconociendo que las confiscaciones no son "castigo" para efectos de la cláusula de doble exposición de la Quinta Enmienda de la Constitución federal). Incluso, hay quienes han planteado que, en consideración a su carácter esencialmente punitivo, es inapropiado clasificar los procedimientos de confiscación *in rem* como procesos civiles. Véase Susan R. Klein, *Civil in Rem Forfeiture and Double Jeopardy*, 82 Iowa L. Rev. 183, 190-191 (1996) ("[T]he historical classifictaion of forfeiture as a civil in rem action against a particular piece of property is no longer appropriate.").

159 D.P.R. en la pág. 43; *Del Toro Lugo*, 136 D.P.R. en la pág. 987.[6]

Para que proceda la confiscación bajo esta modalidad -*in rem*- es preciso determinar "si existe prueba suficiente y preponderante de que se haya cometido un delito, y que exista un nexo entre la comisión del delito y la propiedad confiscada". *Del Toro Lugo*, 136 D.P.R. en la pág. 983; véase, también, *Rodríguez Ramos*, 174 D.P.R. en la pág. 203; *Suárez*, 162 D.P.R. en la pág. 52. Nótese, además, que el estándar probatorio al que se alude es "prueba suficiente y preponderante"; esto, bien pudiera acusar una de las particularidades que comporta la confiscación en su modalidad civil, *in rem*, a saber: un estándar probatorio distinto a aquél aplicable a procedimientos propiamente penales.[7] Sin embargo, esta particularidad no trastoca su carácter y naturaleza esencialmente punitivos, según ha sido reconocido palmariamente por este Tribunal.

De otra parte, dada la ficción jurídica que sustenta esta modalidad confiscatoria, en virtud de la cual se le imputa la culpabilidad del delito a la cosa, "la culpabilidad o inocencia del propietario *es*

---

[6] Para una discusión sobre los elementos disuasivos como justificaciones de la pena, véase, en general, Robert Blecker, *Haven or Hell? Inside Lorton Central Prison: Experiences of Punishment Justified*, 42 Stan. L. Rev. 1149 (1990).

[7] En esta ocasión, por ser innecesario, no resolvemos si el estándar de "prueba suficiente y preponderante" es compatible, como cuestión de Derecho Constitucional Puertorriqueño, con la confiscación, dado el evidente carácter punitivo de ésta en nuestro ordenamiento.

*irrelevante* en cuanto a la procedencia o no de la confiscación civil". *Del Toro Lugo*, 136 D.P.R. en la pág. 982. Ello, al menos, en términos estrictamente *ficcionales*. Sin embargo, no debe perderse de vista, que "[e]l derecho crece y se consolida desechando ficciones y afincándose en la realidad". *Pueblo v. Pérez Santaliz*, 105 D.P.R. 10, 23 (1976). Máxime cuando mediante estas ficciones el Estado pretende interferir con intereses constitucionalmente tutelados, como el derecho al disfrute de la propiedad. Const. P.R. Art. II, Sec. 7.

Por último, como ya se dijo, es preciso repetir que, según conceptuado en nuestro ordenamiento, el proceso de confiscación es independiente al encausamiento penal concomitante que dimana de los mismos hechos. *Ford Motor*, 174 D.P.R. en las págs. 741-742; *Del Toro Lugo*, 136 D.P.R. en la pág. 983. Habría, sin embargo, que matizar los efectos de tal independencia.

B

En nuestra jurisdicción, el proceso de confiscación está regulado por la *Ley uniforme de confiscaciones de 2011*, Ley Núm. 119 de 12 de julio de 2011, 34 L.P.R.A. secs. 174 *et seq.*[8] Este estatuto fue

---

[8] Este estatuto derogó la *Ley uniforme de confiscaciones de 1988*, Ley Núm. 93 de 13 de julio de 1988, 34 L.P.R.A. secs. 1723 *et seq.*, la cual, a su vez, derogó la *Ley uniforme de confiscaciones de vehículos, bestias y embarcaciones*, Ley Núm. 39 de 4 de julio de 1960, 34 L.P.R.A. 1721 *et seq.* Nótese, además, que la mayoría de la jurisprudencia citada en

promulgado con tal de "establecer un trámite expedito, justo y uniforme para la confiscación de bienes por parte del Estado y la disposición de éstos". *Exposición de motivos*, *Ley uniforme de confiscaciones de 2011*, 2011 L.P.R. 119 (16ta Asamblea Legislativa, 12 de julio de 2011). Con tal de identificar las normas jurídicas pertinentes para la resolución adecuada de la controversia que nos atañe, conviene repasar puntualmente el texto de aquellos artículos de la referida ley que delimitan la relación entre el proceso de confiscación y el encausamiento penal concomitante a éste, por dimanar de los mismos hechos.

En primer lugar, en lo pertinente, el artículo 8 de la *Ley uniforme de confiscaciones de 2011* dispone que, en nuestro ordenamiento,

> [e]l proceso de confiscación será uno civil dirigido contra los bienes e independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado. 34 L.P.R.A. sec. 1724e.

Se aprecia, pues, que, cónsono con la discusión precedente, en nuestra jurisdicción, la confiscación

esta opinión se resolvió al amparo de estos estatutos derogados. Ello, sin embargo, no es óbice para recurrir a ésta. Como se verá en la discusión ulterior, aun cuando hay diferencias apreciables entre aquellos estatutos y la actual *Ley uniforme de confiscaciones de 2011*, es innegable que este Tribunal afianzó sus decisiones en consideraciones que trascendían determinado esquema estatutario, a saber: el carácter evidentemente punitivo de la confiscación y las salvaguardas que contiene nuestra constitución, las cuales limitan el poder punitivo del Estado.

está caracterizada como un proceso civil –esto es, *in rem*–, independiente a cualquier otro proceso, sea de naturaleza civil, penal o administrativa.

De otra parte, en lo que respecta la regulación positiva de la confiscación en nuestro ordenamiento, el artículo 15 de la *Ley uniforme de confiscaciones de 2011* dispone que "se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos". 34 L.P.R.A. 1724*l*. En consecuencia, "[e]l demandante t[endrá] el peso de la prueba para derrotar la legalidad de la confiscación". *Id.*

Establecido el carácter civil o *in rem* de la confiscación en nuestro ordenamiento –la cual, además, está revestida de una presunción de legalidad y corrección–, conviene repasar someramente cómo la jurisprudencia de este Tribunal ha abordado el asunto de la interrelación entre ésta y el encausamiento penal concomitante relacionado a los mismos hechos, en particular, cuando éste no prospera.

C

Tal y como se ha intimado en la discusión precedente, este Tribunal, en el pasado, al palio de la legislación entonces vigente, atendió la interrelación entre el procedimiento civil de confiscación y el encausamiento penal concomitante a través de la doctrina de cosa juzgada, en su modalidad

de impedimento colateral por sentencia. De esta forma, condicionó la procedencia de la confiscación al resultado del proceso penal relacionado con los mismos hechos. Sin embargo, al utilizar inopinadamente la doctrina de cosa juzgada en la referida modalidad, desnaturalizó el ámbito normativo de ésta y rehuyó articular puntualmente las consideraciones de índole constitucional que afianzaban tal proceder, aun cuando éstas destellaban tímidamente en aquella jurisprudencia. Por tanto, le compete a este Tribunal hacer las distinciones de rigor, si bien someramente, ciñéndonos a las particularidades del caso. Para ello, empero, es menester repasar brevemente la norma anterior que, en esta ocasión, se reformula.

i

La doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, ante todo, busca "promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados". *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 D.P.R. 139, 152-153 (2008). Así, esta doctrina opera "cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante [una] sentencia [anterior] válida y final". *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753, 762 (1981). Esto es, "el *impedimento colateral por sentencia impide que se litigue en un pleito posterior un hecho*

*esencial que fue adjudicado mediante sentencia final en un litigio anterior*". *P.R. Wire Prod.*, 175 D.P.R. en la pág. 152.

Por otra parte, lo distintivo del impedimento colateral por sentencia es que, para que éste aplique, no se precisa la más perfecta identidad de causas entre el pleito en el cual se invoca y el anterior, en el que recayó sentencia válida y final. Ello, contrasta significativamente con la doctrina de cosa juzgada, la cual requiere que "concurra[n] la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". Cód. Civ. P.R. Art. 1204, 31 L.P.R.A. sec. 3343. Véase, además, *A & P Gen. Contractors*, 110 D.P.R. en la pág. 763. Nótese, sin embargo, que al margen de las diferencias apreciables entre la doctrina de cosa juzgada y su modalidad, ambas requieren previamente, para ser invocadas, una adjudicación válida, final y *en los méritos*.

No obstante, es menester señalar que en lo que a sus requisitos formales se refiere, este Tribunal ha sido un tanto flexible al considerar el cumplimiento de éstos para su aplicación. Por ejemplo, ha permitido utilizar una convicción penal como impedimento colateral en un pleito civil, aun cuando las partes en ambos pleitos no eran las mismas. Véase, en general, *Fatach v. Triple S, Inc.*, 147 D.P.R. 882 (1999). "La razón para no requerir la identidad de partes en el

contexto de pleitos criminales y civiles surge más por razones de política pública que por consideraciones de teoría jurídica". *Id.* en la pág. 892. Se permite, pues, atenuar los rigores doctrinales de esta figura en atención a consideraciones de política pública. Justamente bajo ese entendido este Tribunal atendió controversias análogas a las que nos ocupa en el pasado.

ii

Cónsono con lo anterior, en lo que respecta la interrelación entre un procedimiento civil de confiscación y el encausamiento penal concomitante a éste, este Tribunal reiteradamente ha resuelto que la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, permite disponer sumariamente de aquél, cuando la causa penal no prospera.[9] Véase, entre otros, *Del Toro Lugo*, 136 D.P.R. 973. Esto, aún cuando la causa penal concomitante no haya prosperado en etapas anteriores al juicio, o sea, aún cuando no se haya obtenido una absolución en los méritos.

> En síntesis, . . . [la jurisprudencia de este Tribunal] reconoce[] que la *absolución* en los méritos durante el juicio en su fondo, la *exoneración* del imputado al advenir final y firme la determinación de no causa probable para acusar, así como la supresión de la única evidencia incriminatoria durante el

---

[9] Una vez más, es imperativo puntualizar que en esta ocasión nos ceñimos a aquellas instancias en que el encausamiento penal no prospera por razones distintas a una absolución en los méritos. *Cf. Carlo v. Srio. de Justicia*, 107 D.P.R. 356 (1978); *Ochoteco v. Trib. Superior*, 88 D.P.R. 517 (1963).

procedimiento criminal, son fundamentos suficientes para aplicar la doctrina de impedimento colateral por sentencia en el correspondiente proceso civil de confiscación y de esa manera evitar incongruencias injustificadas entre el ordenamiento criminal y civil.

*Suárez*, 162 D.P.R. en las págs. 56-57.[10]

Así, aunque este Tribunal, en el pasado, haya optado por invocar la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, para explicar la relación entre ambos procesos, lo cierto es que esta relación se debe a otras consideraciones. Verbigracia, "evitar incongruencias injustificadas entre el ordenamiento criminal y civil". *Id.* "Es decir, no se trata únicamente de la aplicación de la doctrina de *impedimento colateral por sentencia*, sino de excepciones a la independencia del proceso *in rem* fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito". *Coop. Seg. Mult.*, 180 D.P.R. en la pág. 676. Después de todo, "[e]n nuestro ordenamiento, solamente las personas naturales o jurídicas pueden cometer un delito", *id.* en la pág. 678, y es precisamente en virtud de la comisión de éste que el Estado está legitimado a intervenir con intereses fundamentales como la libertad o la propiedad.

---

[10] Incluso, en *Suárez*, este Tribunal resolvió que la desestimación de la causa penal por incumplimiento con los términos de juicio rápido permitía disponer sumariamente del proceso de confiscación civil relacionado a los mismos. *Suárez*, 162 D.P.R. en las págs. 61-64.

Sin embargo, habría que matizar lo anterior. En realidad, la vinculación de los procedimientos que nos ocupan nunca se pudo explicar satisfactoriamente a través de la invocación, sin más, de la doctrina de cosa juzgada, en la modalidad de impedimento colateral por sentencia. Véase, por ejemplo, *Del Toro Lugo*, 136 D.P.R. en las págs. 1005-1018 (Negrón García, J., Opinión concurrente y disidente). Más bien, la "íntima[]" relación entre ambos proceso, *Coop. Seg. Mult.*, 180 D.P.R. en la pág. 672, se debió a las "excepciones a la independencia del proceso *in rem*" aludidas. Dichas excepciones, a su vez, están fundadas en consideraciones constitucionales, *Id.* en la pág. 680; en particular, en lo que atañe a las limitaciones al poder punitivo del Estado.

D

Como se sabe, nuestra Constitución dispone que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley". Const. P.R. Art. II, Sec. 7. Como bien señala el Prof. Luis E. Chiesa Aponte, "[a] primera vista, . . . [esta cláusula] solamente parece imponer limitaciones procesales al poder punitivo estatal. Sin embargo, en virtud de esta cláusula también se le imponen límites al poder del Estado para crear normas de derecho penal sustantivo". Luis Ernesto Chiesa Aponte, *Derecho Penal Sustantivo* 38 (2007). De otra parte, nuestra Constitución también reconoce el derecho al disfrute de la propiedad como

una de esas prerrogativas del ciudadano de carácter fundamental. Véase Const. P.R. Art. II, Sec. 7. No es para menos, la propiedad no sólo constituye un instrumento para organizar y regular un sinnúmero de relaciones jurídicas, sino que también constituye un medio a través del cual los individuos pueden garantizar las condiciones básicas indispensables para la materialización de una vida digna. Así, las disposiciones pertinentes de la *Ley uniforme de confiscaciones de 2011* han de interpretarse a la luz de estas consideraciones.

E

Tomando en cuenta lo anterior, convendría repasar las disposiciones pertinentes de la *Ley uniforme de confiscaciones de 2011*. En particular, lo que se refiere a la independencia entre un proceso civil de confiscación y el procesamiento penal concomitante a éste.

Según se dijo, el artículo 8 de la *Ley uniforme de confiscaciones de 2011* establece la independencia entre los procedimientos que nos ocupan. Sin embargo, dada la discusión precedente, habría que repensar los contornos de tal independencia; sobre todo, habida cuenta de los intereses constitucionales concernidos.

Para efectos de la controversia que nos atañe, baste decir que la independencia del proceso de confiscación es una independencia de carácter *formal* –esto es, procesal–. Es decir, tal independencia supone

que en ese proceso se dirimirá exclusivamente aquello que se relacione a la confiscación, de conformidad con las pautas jurídicas aplicables. Además, dada su caracterización como "proceso civil", resultarán inaplicables, por ejemplo, las rigurosas salvaguardas procesales que son imperativas en un procesamiento propiamente penal. Lo anterior, empero, no implica, de suyo, que dicho proceso confiscatorio no pueda verse afectado por determinaciones en otros procesos, las cuales bien podrían incidir en la médula de éste. Esto es, la independencia *formal* de los procesos no impide que éstos estén *materialmente* relacionados entre sí. Después de todo, las protecciones que dispensa nuestra Constitución –de factura más ancha[11]– no han de ceder ante meros formalismos, cuando éstos pretenden ser usados como subterfugios para que el Estado menoscabe intereses constitucionalmente protegidos. Recuérdese, pues, que mediante la confiscación el Estado ejerce su poder punitivo y, en efecto, incide sobre uno de los derechos fundamentales de la persona, a saber, la propiedad. Véase Const. P.R. Art. II, Sec. 7.

---

[11] *Cf.* Ernesto L. Chiesa Aponte, *Los derechos de los acusados y la factura más ancha*, 65 Rev. Jur. U.P.R. 83, 119 (1996) ("En Puerto Rico se ha llegado a resolver que una absolución tiene efecto de cosa juzgada, a favor del acusado, en cuanto a la acción civil de impugnación de confiscación, si la confiscación está basada en la conducta delictiva por la que fue absuelto el acusado. Esto es cuestionable, por decir lo menos, en virtud del escaso valor probatorio de una absolución, para lo que basta duda razonable, a diferencia de la acción de confiscación donde es suficiente preponderancia de la prueba. *Si se quiere, aquí hay también 'factura más ancha'*".) (énfasis suplido).

Por otro lado, el artículo 15 de la *Ley uniforme de confiscaciones de 2011* establece una "presunción de legalidad y corrección" a favor del Estado. Según ésta, se presumirá en todo momento que la confiscación efectuada por el Estado fue conforme a Derecho, esto es, fue legal. Sobre este particular, y a la luz de la discusión anterior, es suficiente señalar que el resultado favorable obtenido en el proceso penal relacionado a los mismos hechos que motivaron la confiscación hace innecesario tener que discutir en esta ocasión cómo opera dicha presunción. Téngase en cuenta que la vinculación de ambos procesos, en nuestra jurisdicción y al palio de nuestra Constitución, responde a exigencias de índole constitucional. Véase *Coop. Seg. Mult.*, 180 D.P.R. en la pág. 680 ("Al amparo de nuestras interpretaciones constitucionales, y cónsono con la normativa federal vigente, hemos vinculado el resultado del proceso civil de confiscación al desenlace de la causa criminal contra la persona imputada del delito base del cual se justifica la confiscación".).

III

En el caso ante nuestra consideración, Universal –la recurrida– interpuso una demanda de impugnación de confiscación. Durante la tramitación de ésta, presentó una moción de sentencia sumaria. En dicha moción, alegó que la determinación de "no causa para acusar", obtenida en vista preliminar en alzada en el

procedimiento penal concomitante a los mismos hechos que motivaron la confiscación, debería servir como base para disponer sumariamente de la demanda en cuestión. Esto es, el resultado del proceso penal relacionado a los mismos hechos debía de surtir efectos en el proceso civil de impugnación de confiscación. El Estado, por su parte, se opuso oportunamente e invocó los artículos 8 y 15 de la *Ley uniforme de confiscaciones de 2011*, en tanto éstos disponen, respectivamente, la independencia de ambos procedimientos y establecen una presunción de legalidad y corrección a su favor.

Trabada en estos términos la controversia, el foro primario declaró con lugar la demanda de impugnación de confiscación, tomando en consideración los fundamentos previamente señalados. Mientras tanto, el foro apelativo intermedio fue de la misma opinión y, en consecuencia, confirmó el dictamen recurrido. Según la discusión que precede, ambos foros actuaron conforme a Derecho.

Como se dijo, el resultado favorable en el proceso penal relacionado a los mismos hechos que motivan la confiscación permite disponer sumariamente del pleito civil de impugnación de ésta. Esto, debido a consideraciones de índole constitucional, las cuales vinculan indefectiblemente ambos procesos. Ante todo, la mera clasificación del proceso de confiscación como uno "civil" no lo desvirtúa de su naturaleza punitiva,

según ha sido reconocida por la jurisprudencia de este Tribunal. De igual forma, la mera invocación de la ficción *in rem* no permite que el Estado intervenga con intereses fundamentales del ser humano, como la propiedad, sin atenerse a los imperativos de nuestra Constitución. No habiéndose probado delito alguno, el Estado está impedido de probar que la cosa confiscada se utilizó en la comisión de un delito –como cuestión jurídica–.

IV

Por todo lo anterior, es menester concluir, sin ambages, que bajo la *Ley uniforme de confiscaciones de 2011* la determinación favorable a un imputado o acusado en el procedimiento penal surte efectos sobre el pleito civil de impugnación de confiscación relacionado a los mismos hechos delictivos. Este resultado es cónsono con las protecciones robustas que brinda nuestra Constitución. Asimismo, llegamos al mismo sin tener que recurrir necesariamente a la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia. De lo que se trata, más bien, es de limitaciones al poder punitivo del Estado en virtud de las salvaguardas que contiene nuestra Constitución. La mera invocación de una ficción jurídica, pues, no ha de permitir que el

Estado desatienda las exigencias que le impone nuestra Constitución.[12]

En mérito de lo antes expuesto, estoy *conforme* con la determinación del Tribunal de Apelaciones, la cual se confirma, por estar igualmente dividido este Tribunal.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada

---

[12] Es imperativo señalar que los argumentos constitucionales que preceden se hacen al amparo de la Constitución del Estado Libre Asociado de Puerto Rico. Véase *Michigan v. Long*, 463 U.S. 1032 (1983).